HARTFORD ACCIDENT & INDEMNITY
COMPANY, Appellant,

v.

Douglas F. GANT, Appellee.

No. 15826.

Court of Civil Appeals of Texas.

Dallas.

March 31, 1961.

Rehearing Denied May 5, 1961.

Jackson, Walker, Winstead, Cantwell &
Miller and L. P. Bickel, Dallas, Gullett &
Gullett, Denison, for appellant.

Slagle, Hughes & Kennedy, Sherman, for
appellee.

WILLIAMS, Justice.

This is a workmen's compensation case.
Appellee, Douglas F. Gant, alleged that on

May 1, 1959, while engaged in his duties for his employer, Anderson-Clayton Company, he sustained a strain while engaged in parking and unloading his truck, said strain and exertion causing an injury to his heart and resulting in total and permanent disability. Based upon the verdict of the jury the trial court rendered judgment for appellee for total permanent disability benefits.

■ At the outset appellee has filed a motion to strike appellant's "amended brief". Appellant's original brief contained 12 points of error and in its amended brief it brings forth 22 points of error. Appellant states, both in the amended brief and in oral argument, that the sole purpose and effect of filing the amended brief is to eliminate original points of error 6, 7 and 8 which are no longer relied upon, and thereby waived, and also to cure possible objections that points of error 4 and 5 of the original brief are multifarious. No new points of error are assigned in the amended brief. Appellant, in the amendment, merely eliminates 3 points and then breaks down into separate points the identical questions raised in its original points 4 and 5. We see no possible harm or damage to appellee by this method of briefing and therefore overrule appellee's motion to strike the amended brief.

Both in its amended brief and in oral submission before this Court, appellant frankly states that it predicates its appeal solely on two contentions, (1) that there is no evidence; or (2) the evidence is wholly insufficient to establish (1) that appellee sustained an injury within the meaning of the Workmen's Compensation Law of Texas, and (2) that there was a causal connection between any alleged injury and the resulting heart attack sustained by appellee on the occasion in question. By its points 1 to 8 inclusive, appellant sets forth "no evidence" points. These have to do with the alleged error of the court in failing to grant appellant's motion for instructed verdict, motion for judgment non obstante veredicto, and also in overruling appellant's objections to the submission of special issues 1, 1A, 1B, 2 and 4. Appellant's second group of points being numbered 9 to 22 inclusive, are "insufficiency evidence" points. They have to do with the alleged error of the court in overruling appellant's motion for new trial based on complaints of the insufficiency of the evidence to support the jury's findings to material factual issues concerning the injury and the causal connection thereof with the heart attack sustained by appellee.

■ In considering these "no evidence" and "insufficient evidence" points of error we are guided by the rules which are so carefully and explicitly explained by Chief Justice Robert W. Calvert of the Supreme Court in his Article entitled "No Evidence" and "Insufficient Evidence" Points of Error, Texas Law Review, Vol. 38, April 1960, pp. 361–372. There, in discussing the "no evidence" points Justice Calvert said:

> "It is in deciding 'no evidence' points in situation (c) that the courts follow the further rule of viewing the evidence in its most favorable light in support of the findings of the vital fact, considering only the evidence and the inferences which support the finding and rejecting the evidence and the inferences which are contrary to the finding."

In Higginbotham v. O'Keeffe, Tex.Civ. App.1960, 340 S.W.2d 350, 354, (no writ history) the rule applicable to consideration of "no evidence" points is stated:

> "Appellants' first two points of error complain of the trial court's refusal to instruct a verdict for defendants, and its failure to render judgment in the defendants' favor, not withstanding the verdict. These two points of error deal only with the question of law of 'no evidence'. Any points of errors relating to motions for instructed verdict or motions for judgment not withstanding the jury's verdict are said to be 'no evidence' points of error regard-

less of the language used in the points of error. (Citing Judge Calvert's Article in Law Review.) The sufficiency of the evidence is therefore not raised by the appellants' first two points of error. It follows that this Court has no jurisdiction to pass on the question of sufficiency of the evidence to support the findings of the jury. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164. We must examine the evidence to determine whether there is evidence of probative value which with the reasonable inferences therefrom will support the findings of the jury in answer to special issues submitted. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359; Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497."

See also Gregory v. Tyler Grain & Storage Co., Tex.Civ.App.1960, 341 S.W.2d 221, (no writ history) wherein the same rule is announced.

Bearing in mind these principles of judicial interpretations we proceed to consider first the "no evidence" points raised by appellant. To do so requires a summary of the testimony.

■ Appellee, Douglas F. Gant, testified that he was 40 years of age and had been employed by Anderson-Clayton Company, as a truck driver since 1944, or a period of 17 years. As a part of his duties he was required to drive a truck and deliver shortening and margarine products to various places. During the period of employment with Anderson-Clayton Company he had never lost work or was caused to leave his job because of any type of heart condition or other illness, other than the "flu". He testified positively that prior to May 1, 1959, he had never had any heart trouble or other illness or disease; that he had never filed a previous claim for workmen's compensation benefits. While returning from a trip to Hope, Arkansas on the morning of May 1st, 1959 he stopped at Texarkana, and after eating his lunch, went to the Ritchie Wholesale Company to unload merchandise. He backed his truck and trailer to the loading dock, such operation requiring from ten to fifteen minutes, and then started to unload packaged shortening. He utilized a two-wheel buggy or dollie and was assisted by other employees on the dock. On the dollie or buggy were cases of packages weighing approximately 53 pounds each, and there were approximately 10 of these packages which made a total of about 530 pounds. While working he got pretty hot and went and got a swallow of water. With reference to the accident, he said: "so I went ahead to load this one up. And as I loaded it up, or got it loaded, rather, I reached down and picked up the handles and started out to the back of the trailer with it. Just as I picked it up, someing—I don't know how it did feel, but something felt like it hit me as I raised it up." He said a sharp pain started through his arms which occurred while he was picking up the load or reaching down to pick it up. The pains in his arms became worse, and he began to break out in perspiration and began to feel sick at his stomach, and his legs began to become weak. He stood by until the loading operations were completed and then got into his truck and drove to another wholesale grocery company where he started backing up to the dock. While backing the truck his hands became paralyzed to where he could not use them on the steering wheel. He got out of the truck and almost fell because of weakness, so he sat down on the dock. He went to the hospital at Texarkana where he was treated in the emergency room and remained in the hospital for a few hours when two of his company officials came and picked him up and carried him back to Sherman. He stated that on the way back to Sherman he told the two Anderson-Clayton Company officials what had happened to him at Texarkana. "Did you tell them more or less the same story that you told the jury here today? A. Yes, Sir." The following

morning he went to the hospital at Sherman and was treated by his family physician, Dr. Hardy, who had treated his family for the past 15 years. He remained in the hospital for 28 days and since that time he has not resumed his former employment but has done several jobs requiring very little exertion. While in the hospital the employer's personnel man, Mr. Arnold Dutton, came to the hospital and had appellee sign some papers, which he was told was for his compensation. On May 7, 1959, appellee signed a claim form for disability benefits from Travelers Insurance Company, said form specifically asking the claimant to state when, where and how the accident occurred, if the disability resulted from an accident. Appellee left a blank space in response to this question. This was a form that appellee contended was presented to him which he thought was an application for workmen's compensation benefits. Later, in October 1959, appellee received a letter from Travelers Insurance Company advising appellee that he was not entitled to group disability benefits from that company if he was claiming a compensable accidental injury. In response to this letter appellee wrote the Travelers Insurance Company and told them he had not filed a claim for compensation. Some 10 days thereafter he did file a notice of injury and claim for compensation with the Industrial Accident Board based upon the facts hereinbefore related.

Dr. Hardy, appellee's medical witness, testified that he had been appellee's family physician over a period of years and had seen, examined and treated appellee following May 1, 1959. He testified that appellee had suffered a coronary thrombosis, or blood clot, and that, in his opinion, the exertion caused by the incident described by appellee had precipitated this heart condition. He testified that appellee had previously had arteriosclerosis.

The material portions of this testimony concerning causal connection between the exertion and the formation of the blood clot, is as follows:

"A. This patient we subsequently proved by subsequent examination had a certain degree of arteriosclerotic heart disease. He suffered a clot of blood at the posterior wall of his heart. It is my opinion that the exertion contributed to the formation of that clot."

Again he testified:

"Q. Alright. One final question Doctor. Doctor Hardy, in your opinion would the exertion of Mr. Gant in unloading the truck, backing the truck up to the dock (as you testified) on May 1st, 1959, be a precipitating cause, or a contributing cause of the injury to his heart and a condition you found him in on May 2nd, 1959?

"A. Yes."

The doctor, on cross-examination, admitted that several things could cause a blood clot, but he remained firm in stating that in his opinion the exertion was a precipitating cause in this particular case. The doctor admitted that he had filled out the forms for Travelers Insurance Company instant to furnishing hospital benefits wherein he had not related an accident. He explained this by stating that he did not know that exertion which precipitated the heart attack was considered an injury under the compensation law, and had he known this he would have so stated in the form.

Doctor John M. Dodge, the doctor who saw appellee in the emergency room at the hospital in Texarkana, testified for appellant and stated that the history which the appellee had given him on the date of the accident was that he had eaten his lunch and that after lunch his arms began to feel heavy and ache; that he got out of his truck and felt dizzy, following which he was brought to the hospital. The doctor testified that appellee gave him a history of having prior emotional disturbances, and that there was a probability that the emotional disturbances and the heavy meal

combined with an artery disease would cause a coronary occlusion.

Appellant called as its principal expert witness, Doctor Neal Tripplett, a heart specialist. Doctor Tripplett admitted that he had never seen appellee nor examined him, but based his testimony upon examination of the records furnished, and also hypothetical questions. It was Doctor Tripplett's opinion that he did not consider any strain or exertion received on the job to be contributing factor to the heart attack in this case. The basis of his opinion was mainly on the fact that appellee had done the same kind of work for a great number of years and that he had never had this trouble before, therefore, he concluded that in reasonable medical probability the attack was caused by the disease of arteriosclerosis in and of itself through its natural development.

■ With this testimony, together with all of its inferences, considered in a light most favorable to the verdict, we conclude, without difficulty, that there was ample evidence sufficient to justify the submission of the material issues concerning injury and causal connection thereof to the jury. Appellee testified positively that he did sustain an injury while lifting the heavy load, and also while maneuvering his truck in parking operations. While he did not relate, in detail, this history to the doctor in the emergency room at the Texarkana hospital, this fact is easily explainable, as it was by appellee when he said that he was suffering intense pain at the time he was in the emergency room. He testified positively he related these facts to his employers on the trip back to Sherman. No rebuttal was made to this statement. He gave reasonable explanation for his omission of the history to the Travelers Insurance Company as did Dr. Hardy, who explained his misunderstanding of the compensation law in failing to give such history of injury to the Travelers Insurance Company. That a strain or exertion is an accidental injury within the meaning of the Workmen's Com-

pensation Law of Texas is no longer open for dispute. 45 Tex.Jur. 494: "Included among accidental injuries received in the course of employment, for which compensation has been allowed, are those resulting from strain * * *." Furthermore, the fact that appellee may have been suffering with this heart condition for many years, but which had not given him any trouble or prevented him from working, does not alter the basis for recovery. 45 Tex.Jur. p. 496; Traders & General Insurance Company v. Rooth, Tex.Civ.App., 268 S.W.2d 539; Carter v. Travelers Insurance Company, 132 Tex. 288, 120 S.W.2d 581. See also 45 Tex. Jur. § 98, p. 492; Texas Employers' Insurance Ass'n v. Parr, Tex.Comm.App., 30 S.W.2d 305; and Texas Indemnity Insurance Company v. Staggs, 134 Tex. 318, 134 S.W.2d 1026, all holding that compensation will not be denied even though the injury may be activated or enhanced by the effect of disease existing at the time or even afterwards occurring. In our opinion the testimony of Dr. Hardy was amply sufficient to support the causal connection between the exertion caused by lifting and straining with the resultant disability. See Texas Employers' Insurance Ass'n v. Talmadge, Tex.Civ.App., 256 S.W.2d 945; Aetna Insurance Company v. Hart, Tex. Civ.App., 315 S.W.2d 169; Traders & General Insurance Company v. Bass, Tex.Civ. App., 193 S.W.2d 848.

Accordingly, we hold that there was evidence to support the submission of issues of injury and the causal connection between injury and disability to the jury, and therefore, the trial court did not err in overruling appellant's motions for instructed verdict and judgment notwithstanding the verdict. Appellant's "no evidence" points 1 through 8 are therefore overruled.

■ We next consider appellant's "insufficiency evidence" or "contrary to the great weight and preponderance" points 9 through 22. In considering these points we are required to apply a different rule than that utilized in considering the "no evi-

dence" points above. The Supreme Court, in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661, announces this rule:

"The question ('sufficiency' of the evidence) requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure Nos. 451, 453 and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust— this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict."

See also Chief Justice Calvert's statement in the Texas Law Review Article, supra.

Giving due application to this rule we have carefully considered all of the evidence, both favorable to and contrary to the verdict. While there is a definite conflict between the medical witnesses who testified for appellant and appellee, and while there are certain inconsistencies in appellee's testimony concerning his revelation of the history of his injury, we cannot, and do not, conclude that the verdict in this case is so against the great weight and preponderance of the evidence as to be manifestly unjust. The trial court fairly submitted the issues on behalf of appellee, and likewise fairly submitted the defensive issues of appellant. The jury found that appellee sustained an injury in the course of his employment as a result of having strained the muscles of his heart and thereby causing a heart attack, which resulted in total and permanent disability. They also found that the incapacity was not due solely to pre-existing conditions, or diseases, and was not caused by a progressive condition of the pre-existing heart trouble,

wholly disassociated with the injury of May 1st, 1959. We hold that the answers to these issues are amply supported by evidence of probative force. As in all cases, the jury in this case heard the testimony, weighed it, and found against appellant on every issue. We hold that the evidence was sufficient not only to submit the issues to the jury, but to justify the trial court in refusing to grant a new trial based upon the insufficiency of said issues as they were answered by the jury. Accordingly, appellant's "insufficient evidence" points 9 through 22 are overruled.

The judgment of the trial court is affirmed.