Mildred **THOMAS** et al., Appellants,

v.

**T. C. BATESON COMPANY** and Mobley-Speed Cement Contractors, Appellees.

No. 17225.

Court of Civil Appeals of Texas.

Dallas.

Jan. 17, 1969.

Rehearing Denied Feb. 14, 1969.

John E. Collins and Otto Mullinax, of Mullinax, Wells, Mauzy, Levy & Richards, Dallas, for appellants.

W. B. Patterson and Jack Pew, Jr., of Jackson, Walker, Winstead, Cantwell & Miller, for appellee T. C. Bateson Co.

Larry L. Gollaher, of Thompson, Coe, Cousins, Irons & Porter, Dallas, for appellee Mobley-Speed Cement Contractors.

DIXON, Chief Justice.

Appellants Mildred Thomas, individually and as next friend of her four minor children, and Willis Thomas, Jr., brought this suit for damages for the death of their husband and father allegedly resulting from the negligence of appellee T. C. Bateson Company, Inc. and the gross negligence of Mobley-Speed Cement Contractors. The latter company is a partnership composed of H. B. Mobley and Bert W. Speed. The appellees will hereinafter be referred to as Bateson and Mobley-Speed respectively.

Bateson was the general contractor and Mobley-Speed a subcontractor engaged in the construction of a structure for the Danciger Research Laboratory connecting the University of Texas Southwestern Medical School with Parkland Hospital in Dallas, Texas. Willis Thomas, now deceased, was an employee of Mobley-Speed.

After appellants had rested in the production of evidence appellees made motions for instructed verdict. These motions were sustained and judgment accordingly rendered that appellants take nothing.

## FACTS

Thomas was employed by Mobley-Speed to operate a "cement buggy." The buggies being used on this job would pick up wet cement loads from a hoist located in a corner, then transport the cement to various points to be poured as needed.

The buggy operated by Thomas was 46 inches wide. There were two front wheels, one on each side of the machine, and two smaller wheels close together un-

derneath the rear. On the occasion in question Thomas was working on the fourth floor operating a buggy on a pathway composed of mats which were laid on a ramp. This pathway of mats was eight feet wide except at turns in the pathway when it narrowed to a width of only four feet, for the eight foot mats could not be laid around a curve. The pathway was too narrow to permit the buggies to be turned around after they had delivered their loads of cement. It was necessary to back them down the narrow ramp. Only one buggy at a time could go up and down the ramp.

Thomas was backing the buggy down the ramp. At a point where the ramp was only four feet wide he and his buggy went over the side into a stairwell. Thomas fell four floors to his death. There was wet concrete on the ramp. There is evidence that Thomas did not drive the right outside wheel of his buggy over the side, but that the wheel slipped off the four foot ramp and the buggy flipped over.

At the time Thomas was moving slowly. He had not worked on this particular job before. On this occasion he had made only two trips up and down the ramp.

There were no guard rails, toeboards, or any other protective devices at the point where Thomas fell into the stairwell.

In evidence were contracts between the State of Texas and Bateson, the general contractor, and between Bateson and Mobley-Speed, the subcontractor.

## OPINION

1. In re Bateson.

■ Willis Thomas was an employee of Mobley-Speed, a subcontractor. But Bateson, the general contractor in control of the premises, owed a duty to employees of subcontractors to exercise ordinary care to keep the premises in a reasonably safe condition. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950). This duty is said to be similar to that owed by an owner or occupier of land to his in-

vitees. Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S. W.2d 391, 393 (1954). See also Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S. W.2d 609, 618, 23 A.L.R.2d 1114 (1951).

■ In order to uphold the court's action in directing a verdict for appellees we must be able to hold correctly as a matter of law that the record contains no evidence of probative value that Bateson was negligent in discharging its said duty. This means that there were no fact issues to be determined by the jury. In deciding the question all of the evidence and the inferences therefrom must be viewed in a light most favorable to the losing party. Harvey v. Elder, 191 S.W.2d 686 (Tex.Civ.App., San Antonio 1945, writ ref'd); White v. White, 141 Tex. 328, 172 S.W.2d 295 (1943); 3 McDonald, Texas Civil Practice, 1025 (1950).

In three points of error appellants contend that the record discloses fact issues (1) as to whether Bateson failed to live up to its common law and contractual duty to furnish such reasonable safety features as would have prevented the accident—that is, whether Bateson was guilty of negligence; (2) as to whether Thomas knew, understood, fully appreciated and voluntarily undertook the risk that resulted in his death; and (3) whether all of appellants have been damaged by his death. We agree with appellants.

In two counterpoints Bateson asserts that appellants did not overcome the "no duty" doctrine in that they failed to produce evidence that the dangerous condition for which they seek to hold Bateson responsible was not so open and obvious that Willis Thomas knew or should be charged with knowledge and appreciation thereof; and (2) Willis Thomas was guilty of contributory negligence as a matter of law. We do not agree with appellee Bateson.

■ In Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378, 380, 384 (Tex. Sup.1963), our Supreme Court, speaking

through Justice Greenhill, has held that the duty of an occupier of premises to keep the premises in a reasonably safe condition for invitees includes a duty to inspect and discover dangerous conditions. The court also held that fact findings that the plaintiff "should have known" and "should have appreciated" the danger in no duty cases is an erroneous concept. The basis of the "no duty" and *"volenti"* doctrines is that the plaintiff "knew of the danger and appreciated the consequences of encountering it; or the danger was so apparent," that is, that the danger was so open and obvious, "that the law would charge him with such knowledge * * *."

It is interesting to note that in an article in 20 Southwestern Law Journal 13 Justice Greenhill says, "It is the writer's opinion that the danger must be so obvious that anyone could recognize and appreciate it as a danger, i. e. so plain that any fool could plainly see."

■ In applying the above principles to the instant case we have concluded that the facts do not, as a matter of law, bring the case within the concept of the no duty doctrine. We cannot say as a matter of law that Thomas knew and appreciated the risk of his buggy slipping on wet cement so that one of the side wheels went off the narrow mat, plunging Thomas to his death four floors below. Neither can we say that the danger was so open and obvious that Thomas can be held as a matter of law to have had knowledge of the danger.

■ Thomas knew or may be charged with knowledge of the existence of the stairwell. This is a condition. But we agree with appellants that it is the danger, not the condition, which must be open and obvious. And what was not open and obvious under the record before us was a combination of factors which together constituted the danger. These factors are a narrow ramp; a slippery condition on the ramp caused by spilled cement (How long had the spilled cement been there? Did

Thomas have knowledge of its presence? Did he have knowledge that the wheel might slip on it?); an elevated ramp; the fact that there was no way to turn the buggy around; the fact that the ramp at the point of the accident was only two inches wider than the buggy and the fact that he had to back his buggy down the ramp and make a turn at the same time. Certainly Thomas must have had knowledge of some of these factors considered separately, but can it be said that as a matter of law he had knowledge of the danger which he faced when the factors are considered together? We think not under the record before us.

■ It is to be remembered that Thomas had made only two trips up and down the ramp. This is a matter to be considered. Wesson v. Gillespie, 382 S.W.2d 921 (Tex.Sup.1964); Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953). Also there was much activity going on. Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup.1963).

We shall not further lengthen our opinion by additional discussion of the "open and obvious" problem. We shall merely content ourselves by citing other cases which seem to us to lend support to our conclusions. Dunlap v. Executive Inn Motor Hotel Corp., 404 S.W.2d 842 (Tex.Civ. App., Dallas 1966, writ ref'd n. r. e.); Fawbush v. Carter, 354 S.W.2d 649 (Tex. Civ.App., Texarkana 1962, writ ref'd n. r. e.); Blanks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357 (1950); G. C. & S. F. Ry. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227 (1888); Restatement (Second), Torts, 343 A. (1966); Gowdy v. United States, 271 F.Supp. 733 (W.D.Mich.1967); Zentz v. Toop, 92 N.J.Super. 105, 222 A.2d 290 (N.J.App.,1966).

In our opinion there was evidence of the negligence of Bateson. As already stated there were no guard rails, toeboards or other safety devices near the stairwell. The ramp at the curve adjacent to the stairwell was only two inches wider than

the buggy which Thomas was operating. There were other factors.

We sustain appellants' first three points and overrule Bateson's two counterpoints.

2. In re Mobley-Speed.

 Mobley-Speed carried workmen's compensation insurance. Appellants filed their claim and the compensation has been paid. Consequently in order to obtain additional damages in a common law action it is necessary for appellants to prove gross negligence against Mobley-Speed. Texas Constitution, Art. XVI, Sec. 26, Vernon's Ann.St., and Art. 8306, Sec. 5, Vernon's Ann.Civ.St.

In their fourth point of error appellants assert that the court erred in holding that there was no evidence of gross negligence on the part of Mobley-Speed. We do not agree with appellants.

Our Supreme Court has held that in cases of this character gross negligence has been defined as "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." Sheffield Division, Armco Steel Corp. v. Jones, 376 S.W.2d 825 (Tex.Sup.1964). In Southern Cotton Press & Mfg. Co. v. Bradley, 52 Tex. 587 (1880) it is said, "A mere act of omission or non-feasance, to be punishable by exemplary damages, should reach the borderline of a quasi-criminal act of commission or malfeasance." See also Stephens v. Dunn, 417 S.W.2d 608 (Tex.Civ.App., Tyler 1967, no writ); Loyd Electric Co. v. DeHoyos, 409 S.W.2d 893 (Tex.Civ.App., San Antonio 1966, writ ref'd); H. B. Zachry Co. v. Fullilove, 177 S.W.2d 980 (Tex.Civ.App., El Paso 1943, writ ref'd w. o. m.); Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709 (1943).

Applying the above principles to the facts in this case we have concluded, after a careful study of the record, that

there is no evidence of gross negligence on the part of Mobley-Speed. Appellants' fourth point is overruled.

The judgment of the trial court is reversed as to Bateson and remanded for a new trial. The judgment as to Mobley-Speed is affirmed.

Reversed and remanded in part and affirmed in part.