CRAVER–HICKS BUILDING MAINTE-
NANCE, INC., Appellant,

v.

W. H. VANLANDINGHAM et ux., and First
Savings & Loan Association, Appellees.
No. 6021.

Court of Civil Appeals of Texas.

El Paso.

July 16, 1969.

Rehearing Denied Sept. 10, 1969.

Strasburger, Price, Kelton, Martin & Unis, Royal H. Brin, Jr., Dallas, for appellant.

Lynch, Chappell, Allday & Culp, Vann Culp, Jimmie D. Oglesby, Midland, Rass-man, Gunter & Boldrick, John E. Gunter, Midland, for appellees.

## OPINION

FRASER, Chief Justice.

This suit was brought by the Vanlandinghams to seek damages for personal injuries sustained by Mrs. Vanlandingham when she slipped and fell on the floor of the First Savings & Loan Association. Suit was originally against the First Savings & Loan Association alone, and Craver-Hicks Building Maintenance, Inc., which provided janitorial services to the premises, was added as an additional defendant by amendment.

Both defendants filed motions for summary judgment which were granted by the trial court. Upon appeal, this court, under its docket No. 5787, reversed and remanded, holding that there were fact issues for jury trial with respect to both defendants.

After the return of the case to the District Court, plaintiffs took a non-suit as to First Savings & Loan Association. However, First Savings remained in the case because of the cross-action against it by Craver-Hicks seeking contribution or indemnity.

Craver-Hicks moved for instructed verdict at the close of the jury trial, which was refused. First Savings moved for an instructed verdict in its favor with respect to the cross-action by Craver-Hicks and such motion was granted, to which Craver-Hicks duly excepted.

The case was thus submitted to the jury only as between the Vanlandinghams and Craver-Hicks. Upon the jury verdict, judgment was entered against Craver-Hicks in the amount of $22,896.82 together with interest and court costs, the motion of Craver-Hicks for judgment notwithstanding the verdict and alternatively to disregard certain findings being overruled.

After the overruling of its motion for new trial, Craver-Hicks has duly perfected its appeal to this court from the judgment in favor of the Vanlandinghams against it and from the instructing of a verdict in favor of First Savings on Craver-Hicks' cross-action against it.

It appears that appellee Mrs. Vanlandingham had gone into the First Savings & Loan Association's place of business to make a deposit on behalf of one of her grandchildren. Upon reaching the counter she discovered that she had left her passbook in an automobile, and went back then to get the passbook so she could complete the transaction. On this trip, as she was proceeding across the floor to go out to her car, she slipped and fell and was grievously injured, sustaining a bump on her head and a broken hip, and possibly other bone injuries.

Her testimony is that she had been doing business with this savings and loan association for several years and had been making periodical trips in and out of the building every two or three months. She testified that she slipped once before, some months preceding this occasion, but did not fall, and mentioned that it was a wet and rainy day and she didn't know what caused her to slip, but did emphasize that no fall resulted therefrom. As she lay on the floor after her fall, and while waiting for the ambulance, she turned over on her back and states that she felt the floor with her hand and that it was "slippery", but that she did not feel or see any other, or foreign, substance on the floor. She was confined to the hospital for some considerable length of time and incurred substantial doctor bills, hospital bills, and bills for a maid to do the housework while confined to the hospital and after she returned home.

Appellant presents fourteen points of error. The first six points are grouped, and we shall so treat them, with the exception of Point No. 5. These points of error by appellant allege that there was no evidence of probative force to support the findings of causative negligence against appellant; there was no sufficient evidence to support the findings of causative negligence against appellant, and such findings are against the great weight and preponderance of the evidence; that recovery by the Vanlandinghams herein was barred as a matter of law by the doctrine of "volenti non fit injuria" or voluntary exposure to risk under the present record; that recovery against appellant was barred herein as a matter of law under the "no duty" doctrine; that recovery against appellant herein was barred as a matter of law under this record by contributory negligence; and that the findings of the jury in connection with the contributory negligence, voluntary exposure to risk and open and obvious issues are against the great weight and preponderance of the evidence. We feel that these points (Point No. 5 is not briefed) must be overruled for the following reasons.

Witness George Tisdale testified that he had worked for the appellant for around eight years as a janitor, and that he worked in this particular building every night, dusting, tidying up, etc.; would wet mop once a week, and would wax the floor every two weeks on Friday night using a mixture of water and wax.

Mr. Dean Blakeny testified that he was the manager for appellant in the building maintenance business for twelve years, and that the employees are given instructions as to how to apply wax and take care of the floors, and that the wax used was a nonskid wax. He further testified that his company was still taking care of the building in question; that there had never been any other complaints of anyone slipping on the kind of floor during all the time he had been doing business in Midland; that he examined the floor right after appellee fell; that it looked clean and about like it always had, and had no wax buildup on it and that, in his opinion, the floor was not in a slippery condition. Upon examination by counsel for the Savings and Loan Association, he testified that high quality non-

slip wax was used and that good, customary, janitorial cleaning practice was followed, and repeated that when he examined the floor right after Mrs. Vanlandingham fell, it was clean and neat, with no debris and no wax buildup, and that the floor was not slippery or slick and had nothing wrong with it; that no one had ever fallen in the First Savings building before, and no one had fallen thereafter; that there had been no complaints as to how the floor was kept or how they maintained any other floors in any other buildings.

Mr. Paul Davis, Vice President of the Savings and Loan, testified there was no carpet on the tile floor in the area where appellee fell; that he arrived on the scene right after the ambulance had taken Mrs. Vanlandingham away, and that he got on his hands and knees and made a close examination of the floor; that the floor was well kept and clean but not any more slippery that day than any other day; and that no one had ever fallen on the floor before, nor had there been any complaints about it being slippery.

Mr. E. Storey, of Midland, testified that he didn't recommend any wax at all for Robbins tile, which was the tile on the floor in question.

D. A. Westlake, a floor covering contractor from Temple, Texas, testified in response to hypothetical questions that the floor had not been properly maintained; that the wrong kind of material had been used, and that previously applied wax had not been properly stripped off when new wax was applied, thereby causing a wax buildup. Mr. Westlake further testified that the manufacturers of Robbins vinyl tile, which was the tile on the floor in question, did not recommend the application of wax to its tile, and introduced the manufacturer's written instructions with respect to Robbins vinyl tile. The evidence shows that a floor wax manufactured by another company, to-wit, Washburn Company, had been applied to the floor at least twice monthly. Witness Westlake further testified that soap and water would not remove

the wax, and the cleaner provided by the manufacturer should have been used, and that failure to do so would cause a wax buildup, and the chemical reaction of continued waxing and buffing reduces the flexibility of the tile in question and develops a hardness, thereby reducing the resiliency that was built into it. He further testified that the absence of scuff marks or marks of any kind on the floor where Mrs. Vanlandingham slipped verified his opinion. He further testified that the method of stripping the old wax off, to-wit, the use of soap and water, would be ineffective. Westlake and Storey were both very firm in their opinion that no waxing at all is called for on a vinyl floor.

Mrs. Vanlandingham testified that she saw no foreign material on the floor; that the floor was very slick, but she did not know it was very slick before she fell on it, and that it had always been highly polished, and testified further in her deposition that in her experience with the floor she had always found it slippery, and it was always slippery in her opinion, and that she had always noticed the surface of the floor was slippery when she was in, and that she noticed the appearance of the floor before she fell and it appeared to be slippery the way it always was; that she never mentioned the slippery condition of the floor to anyone before. She testified on re-cross examination that there wasn't any difference between the floor on the date of the fall and on any other occasion when she had been in the Savings Association every two or three months for several years and that the appearance and condition of the floor had never changed.

In response to special issues the jury found that the following acts or omissions of the appellant were negligence and a proximate cause of Mrs. Vanlandingham's injuries:

(a) That appellant had previously applied excessive coats of wax to the floor in question;

(b) That appellant had previously applied coats of wax to the floor in a

manner contrary to the instructions of the manufacturer of the tile;

(c) That appellant had failed to sufficiently strip the old wax off the floor before applying new wax;

(d) That appellant's application of coats of wax to the floor was negligence and a *proximate cause*;

(e) That appellant failed to properly instruct its employee regarding the methods of properly maintaining the floor.

With regard to appellant's contention that Mrs. Vanlandingham had voluntarily exposed herself to the risk of falling on the floor, the jury made the following factual determinations from the evidence:

(a) That Mrs. Vanlandingham did not become aware of the nature and extent of the danger of the slippery condition of the floor until she walked on it;

(b) That Mrs. Vanlandingham did not have full knowledge of the condition of the floor;

(c) That Mrs. Vanlandingham, in the exercise of ordinary care, should not have had full knowledge of the condition of the floor.

With regard to appellant's contention that the condition of the floor was open and obvious to Mrs. Vanlandingham and that it therefore owed her no duty, the jury found that the condition of the floor was not open and obvious to Mrs. Vanlandingham. With regard to appellant's contention that Mrs. Vanlandingham had been guilty of contributory negligence, the jury made the following factual determinations from the evidence:

(a) That Mrs. Vanlandingham did. not fail *to* keep *a proper* lookout;

(b) That Mrs. Vanlandingham's failure to determine whether she could safely walk on the floor was not negligence on her part;

(c) That the fall was not the result of an unavoidable accident.

Appellant has assailed the sufficiency of the evidence to support the jury's determinations of the above factual matters.

■ On the basis of the above testimony and evidence, it can be clearly seen that there was evidence, both pro and con, as to the condition of the floor. These fact questions were submitted to the jury, and the jury found adversely to the defendant. It is our opinion, after consideration of the evidence adduced by both sides, that there was sufficient evidence for the jury to return the findings that it did. Appellant's first six points are therefore overruled. In arriving at the conclusion that these points should be overruled, we have followed the familiar rules for appellate determination of such assignments by first disposing of the law question of "no evidence" before passing on the fact question of the "sufficiency of the evidence". Where the assignment is that there is "no evidence", the reviewing court considers only the evidence favorable to the finding and must sustain the finding if there is evidence of probative force to support it. Hartford Accident & Indemnity Co. v. Gant, Tex.Civ.App., 346 S.W.2d 359; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696. In determining "insufficiency of the evidence" or "contrary to the great weight and preponderance" points, we must consider and weigh all the evidence in the case, and set aside the verdict and remand for a new trial if we conclude that the verdict or finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust; both the evidence for and against the finding is considered. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

■ The appellant's seventh point claims that the trial court erred in instructing a verdict for First Savings & Loan Association upon the cross-action of appellant. As heretofore stated in this opinion, when

plaintiffs took a non-suit against the First Savings & Loan Association, the appellant then filed a cross-action against it seeking contribution and/or indemnity, maintaining that the jury should have been allowed to decide whether the First Savings & Loan Association was itself guilty of some negligent act or omission. As stated heretofore and in the record, the appellant was an independent contractor and had been performing janitor service for First Savings & Loan Association for around eight years before Mrs. Vanlandingham fell, and she is the only person known to have ever fallen on that floor. After years of janitor service, it is difficult to perceive how the Loan company could be negligent when the daily traffic of their business came and went through the years without interruption or accident. All that the Loan company did was to hire appellant as an independent contractor to take care of the floor and other appurtenances of the building. We see no reason why this independent contractor should be entitled either to indemnity or contribution from the First Savings & Loan Association under the circumstances. There is no evidence in the record anywhere that the First Savings & Loan Association did anything with reference to this floor, or contributed in any way to Mrs. Vanlandingham's fall. Therefore, we see no reason why the appellant, whose job it was to keep the floor and building in good condition, should be entitled to any indemnity or contribution for an act committed by one of its employees while it was an independent contractor, and there is no evidence that such contractor or any of its employees was taking orders or directions from said Loan company. It was acting solely as an independent contractor and had been doing so successfully for some seven or eight years prior to Mrs. Vanlandingham's fall. This point is therefore overruled.

Appellant's eighth point maintains that there is no pleading to support the recovery of past and future expenses of household help, and its ninth and tenth points assert that there is no evidence of probative force to support the submission of the issues of reasonable expenses of household help in the past and in the future, or the jury's findings thereon. We think these three points must be sustained. It is asserted by appellees, in answer to the eighth point, that it is implied in the pleadings that the Vanlandinghams needed domestic help because of the injury to Mrs. Vanlandingham. Appellees, in support of this position, set out the following quotation from their petition.

"(P)rior to receiving the injuries aforementioned, his wife was capable of performing her domestic chores and household tasks, and that since receiving the injuries aforementioned has been permanently and partially disabled from performing such domestic chores and household tasks * * *"

We do not think there is sufficient implication in the pleading or quotation therefrom to warrant the court in submitting the issue relative thereto to the jury, and the jury's answer thereto. We also believe that the ninth and tenth points must be sustained because the plaintiff-appellees have not sufficiently proven the amounts paid for such domestic help, past and future. Plaintiff-appellees' Exhibit 9 does include a large number of checks made out to various people. These checks were admitted over the objection of appellant. There was no identification other than the actual names of the payees of these various checks and no specifications of what they were for, but merely the statement by appellee Mrs. Vanlandingham that they were "my bills". There was no oral testimony as to the payment of any household help expenses in the past, nor as to the necessity in the future; thus there was no showing of probative force that there were any such expenses. Furthermore, there is no testimony whatever of any kind or nature as to the reasonableness of the amounts claimed paid and to be paid for such household help, and it is our understanding that under the law, evidence of the reasonableness and

fairness of the payments is a necessary requirement. The burden to prove these matters, of course, is upon the plaintiff. It has been held, in Dallas Consol. Electric St. Ry. Co. v. Ison, 37 Tex.Civ.App. 219, 83 S.W. 408 (Tex.Civ.App.) that the mere fact of payment is no evidence tending to show that it was a fair and reasonable payment. The Supreme Court of Texas, in a later case, reiterates this position, in Dallas Railway & Terminal Company v. Gossett, 156 Tex. 252, 294 S.W.2d 377. The court states:

" * * * it is now well settled that proof of the amounts charged or paid does not raise an issue of reasonableness, and recovery of such expenses will be denied in the absence of evidence showing that the charges are reasonable."

Therefore, because we do not believe plaintiff-appellees properly pleaded or proved the amounts actually paid for maid services before and after Mrs. Vanlandingham's injury, nor the fairness and reasonableness thereof we feel that these points should be, and they are, sustained, and the amounts allocated therefor by the jury will be deleted or subtracted from the total amount of the judgment.

◼ Appellant's Points 11 and 12 state that there is no evidence, or insufficient evidence, to support the issue as to Mrs. Vanlandingham's loss of capacity to work and earn money in the past and in the future, or the jury finding thereon. We think these points must be sustained. The record shows that Mrs. Vanlandingham had not worked and engaged in any gainful occupation for some five years before her accident. When she was asked about whether she had made preparations to open or acquire another store, she was very vague and indefinite; as for example, on cross-examination, and with reference to her deposition, Mrs. Vanlandingham was asked:

"Q This is on Page 30 in the middle of the page. The question you were asked, 'Did you have any plans to return to work in any way at the time of this accident?' And what was your answer?

"A 'I don't think we ever know what we will need to do—'

Q Excuse me, mam, this is the question here. 'Did you have any plans to return to work?'

A 'I was not employed.' "

Then later on in the deposition, she made the answer, "I don't think we ever know what we will need to do."

◼ Appellant's thirteenth point states that the court erred in submitting separate damage issues as to Mrs. Vanlandingham's lost ability to perform the duties and services of a wife in the past and in the future, reasonable expenses of household help incurred and to be incurred as the result of Mrs. Vanlandingham's injuries in the past and in the future, and Mrs. Vanlandingham's loss of capacity to work and earn money, thus allowing multiple and overlapping recovery of the same damage. We find no merit in this point and the same must be overruled. We have already stricken the damages awarded for Mrs. Vanlandingham's expenses for household help and her loss of capacity to work, leaving only her lost ability to perform the duties and services of a wife in the past and in the future. It has long been generally recognized that a wife's services have pecuniary value outside and above ordinary household duties, such as the solicitude of a wife and mother, and similar responsibilities. The issues of her lost ability to perform the duties and services of a wife in the past and in the future were submitted to the court and answered by the jury, and we find no error in these. For these reasons the thirteenth point has no merit, as the matters complained of have already been disposed of previously in our opinion. This point is therefore overruled.

◼ Appellant's fourteenth point charges that the argument to the jury by

plaintiff's attorney prejudicially insinuated the existence of liability insurance on the part of the appellant. Its bill of exception sets forth the argument complained of, which is as follows:

"That's made pretty easy for you. These questions don't ask whether or not Dean Blakeny should pay some money if he was negligent. They just ask you to find the amount of money, and the other questions will take care of themselves."

"Frankly, I don't think Dean Blakeny is highly upset and Mr. Hall from Dallas doesn't seem to be worried about having to pay some money. I don't think he's too concerned."

We do not believe the point presents error. No objection was made at the time, and no request made of the trial judge to charge the jury to disregard the statement, nor was any mention made in the motion for new trial; nor is there any evidence of improper discussion of this matter during the jury's deliberations. As a matter of fact, the matter was first brought up in the bill of exceptions, some three months after the trial of the cause and, as stated above, said bill does not show that the matter had ever been brought to the court's attention at the time of the trial. We do not believe the language sufficiently strong or suggestive to create any inference that might lead to an improper verdict. It is not every mention or reference to insurance that requires reversal. We think this comes under that heading. Also, we do not find that counsel deliberately did anything to bring insurance into the picture, or that the inference was plain and unmistakable that the defendant was protected by liability insurance. Herrin Transp. Co. v. Peterson, Tex.Civ.App., 216 S.W.2d 245; South Austin Drive-in Theatre v. Thomison, Tex.Civ.App., 421 S.W.2d 933; Kingham Messenger & Delivery Service, Inc. v. Daniels, Tex.Civ.App., 435 S.W.2d 270. This point is accordingly overruled.

As heretofore stated, appellant's Points 8, 9, 10, 11 and 12 are all sustained. The total of the amounts found by the jury on these points is $6,700.00. This amount, therefore, is stricken from, and deleted from, the judgment of the trial court which was in the sum of $22,896.82. Therefore, we reform the judgment by deducting the said sum of $6,700.00 from the original amount found in the judgment. Thus, the judgment standing in favor of appellees is the sum of $16,196.82.

All of appellant's points, with the exception of Points 8, 9, 10, 11 and 12, are overruled.

The judgment of the trial court is accordingly reformed so as to allow appellees the said sum of $16,196.82 and, as so reformed, is affirmed.

PRESLAR, Justice (dissenting).

I respectfully dissent, in that I would grant appellant's Point of Error No. 7, complaining of the action of the trial court in directing a verdict for the Savings and Loan Association on appellant's cross-action against it for indemnity and/or contribution. Appellant's point is that fact issues were raised as to the causative negligence of First Savings & Loan Association. It is the writer's opinion that the record supports this contention.

The jury found five acts of causative negligence on the part of appellant, Craver-Hicks Building Maintenance, Inc. Four of those issues involved waxing in one phase or another; one was simply that waxing this type of floor at all was negligence. The breach of duty which forms the basis of this lawsuit lies in waxing. I think there is evidence (with reasonable inferences) which connects First Savings to such waxing. Mr. Blakeny, of Craver-Hicks, testified:

"Q Was your agreement with the First Savings & Loan Association to wax twice a month?

A I believe that was the basis of our agreement with them, yes, sir."

As noted by the majority, the floor had been maintained in the same manner for some eight years. The inference is that First Savings had a standard of care for their floor which it required of its janitor, and further, that standard was the existing condition, for it had thus been done to its satisfaction for eight years. At least, they agreed to the waxing, and waxing is the vice of this case. The appeal as to this point being from an instructed verdict, we must consider the evidence and inferences therefrom in a light most favorable to the losing party. Thomas v. T. C. Bateson Co., Tex.Civ.App., 437 S.W.2d 386 (Ref., n. r. e.); Chamberlain v. North Central Investment Corp., Tex.Civ.App., 432 S.W.2d 581 (Ref., n. r. e.). Reasonable men could differ on the question presented, and I am of the opinion that a fact issue was raised as to negligence on the part of First Savings & Loan Association and, such being the case, a verdict should not have been directed.