Hazel Veony COLEMAN, Individually and as Next Friend of Allen Scott Coleman, a Minor, and as Community Survivor of Mike Coleman, Deceased, Appellant,

v.

Fletcher RABB, Individually and d/b/a Vapo Gas and Appliance Co., and Les Trexler, Appellees.

No. 14907.

Court of Civil Appeals of Texas, San Antonio.

Nov. 18, 1970.

Rehearing Denied Jan. 6, 1971.

Rice & Seely, San Antonio, for appellant.

John H. Wood, Jr., Beckmann, Stanard, Wood & Keene, San Antonio, R. S. Crawford, Jr., Uvalde, for appellees.

BARROW, Chief Justice.

Appellant Hazel Veony Coleman, individually and as next friend of Allen Scott Coleman, brought this suit against appellees, Fletcher Rabb, d/b/a Vapo Gas and Appliance Co. and his employee, Les Trexler, to recover damages for the death of her husband, Mike Coleman, as the result of burns sustained in a flash explosion while Coleman's household butane tank was being refilled. A take-nothing judgment was entered after a jury trial. The parties will be hereafter referred to as in the trial court.

The crucial jury findings are: (3) that on January 3, 1968, Trexler put gas in the butane gas tank containing a greater amount of propane than a person of ordinary prudence would have done under the same or similar circumstances; (4) that such act was a proximate cause of the explosion in question; (11) that prior to the explosion in question a perilous condition existed, as a proximate result of gas escaping from the pop-off valve; (12) that Coleman knew of the perilous condition on the premises in question; (13) that Coleman realized that he was in a dangerous position due to such peril; (14) that Coleman voluntarily exposed himself to such

dangers as existed at the time and on the occasion in question; and, (15) that the voluntary exposing of himself to the perilous conditions there existing was a proximate cause of Coleman's injuries. The take-nothing judgment is based on defendants' affirmative defense of volenti non fit injuria as found in Issues 11–15.

Plaintiff-appellant urges ten points on this appeal. Under points 1–6, she asserts that the defense of "volenti non fit injuria" was improperly submitted and that the trial court erred in basing its judgment on the jury findings to Issues 11–15. Under points 7–9, she urges that there is no evidence or insufficient evidence to support the jury findings to these issues. Under her tenth point, plaintiff asserts that Issues 12, 14, and 15 are a comment on the weight of the evidence in that such issues, as phrased assume a dangerous condition existed.

Mike and Hazel Coleman, together with their seven year old adopted son, lived in a frame house in Batesville and used butane gas for heating purposes. Rabb, d/b/a Vapo Gas and Appliance Company of Sabinal, was a dealer in low pressure gas; and one of his delivery trucks was operated by Trexler, who also lived in Batesville. On January 2, 1968, Mrs. Coleman left $10.00 at Trexler's home with the request that he put this much butane gas in the Coleman tank. Trexler was familiar with the Coleman's 150 gallon capacity butane tank in that he had serviced same for several years prior to the last two years, when Coleman had purchased butane from another dealer. Trexler put 62.5 gallons in the tank that day while the Colemans were at work. The Colemans returned home about midnight and unsuccessfully tried to light the heaters. They assumed that Trexler had not made the delivery, so early the next morning, Mrs. Coleman contacted Trexler to check on the delivery and advised him that the heaters would not properly ignite. After inspecting the heaters, Trexler determined that there was probably water in the butane line and that

he would return that afternoon and blow out the line, if Coleman would dig out around the regulator valves which were located near the underground tank.

About 4:00 p. m., Trexler returned to the Coleman home, and after blowing out the line, the heaters properly burned. Coleman then advised Trexler to go ahead and fill the butane tank while he was on the premises. Trexler's truck was backed into the driveway about 20 feet from the underground tank, which was about 10–11 feet from the back door of the house. The truck is equipped with two tanks, one for butane and one for propane. The gas is pumped from the truck through a hose into the customer's tank by a pump operating off the truck's power. The connection was made and after pumping for a short time, during which time 52.3 gallons were pumped, the pop-off or safety valve on the tank popped. This valve was set for about 80 pounds per square inch pressure, and when pressure in the tank exceeds this amount, the valve pops off and permits gas to escape until the pressure drops to 80 pounds. This should normally take only a few seconds after the delivery of gas to the tank is stopped. When the safety valve pops off, it makes a loud whistling noise, similar, but much louder than that made by a pressure cooker and more like the roar of a pear burner.

Trexler testified that he shut off the delivery pump as soon as the valve popped, disconnected the delivery and vent hoses from the tank, and restored them to the truck. The physical facts and testimony of the boy corroborates this testimony. Nevertheless, the pop-off valve did not close and gas continued to escape from the tank under great pressure. After about one and a half minutes, the escaping gas became ignited and the resulting flash-explosion burned both Coleman and, to a lesser extent, Trexler.

The record does not establish the cause of the ignition of the gas in that it was plaintiff's theory, which was supported by the testimony of both Mrs. Coleman and

her son, that Trexler was hitting on the valve with a wrench which caused a spark. Trexler denied hitting the valve, and the jury found (5) that he did not hit it with a wrench. No other cause was submitted to the jury although defendants' witnesses speculated as to other possible causes, such as, a short in an electric water pump located in the back yard, or a spark from dirt or rocks being jostled by the escaping gas.

Nor does the record establish why the pop-off valve continued to spew gas after the pumping from the truck was stopped. Butane gas pressure is much lower than that of propane. For commercial purposes a little propane is added to normal butane at the refinery, and the resulting product is called isobutane. Its pressure is about 50 pounds per square inch as compared to propane pressure of 90 to 100 pounds. Thus, it is seen that propane could not have been mistakingly put in this tank without the safety valve popping very soon, unless the propane was mixed with sufficient butane so as to keep the tank's pressure below 80 pounds. An expert witness testified for plaintiff that a test made after the explosion showed that the liquid in the tank consisted of 68.81% propane, 6.88% isobutane, and 24.31% normal butane. This amount of propane could explain the terrific pressure that was apparently built up in the tank, but does not explain why the safety valve did not pop off sooner. There is some evidence that the gauge on the tank was not accurately set, but there is no evidence that the deceased knew of this inaccuracy, or that it contributed in any way to the explosion.

■ It is beyond argument at this time that *volenti* is recognized as an affirmative defense in this state. The rule was stated in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.1963), as follows: "The *volenti* doctrine is an affirmative defense. 'Volenti' is a contraction of the Latin phrase, *volenti non fit injuria*, which means legally that a plaintiff may not recover for an injury to which he assents; that a person may not recover for an injury received when he voluntarily exposes himself to a known and appreciated danger. In this state, the decision to incur the risk must have been deliberate; i. e., made with knowledge and appreciation of the danger so that it may be said that the person acted as a result of an intelligent choice." The Court recognized, however, that such doctrine is a relatively harsh one, and that the Court felt required to keep it within justifiable limits. See also J & W Corporation v. Ball, 414 S.W.2d 143 (Tex. 1967); Ellis v. Moore, 401 S.W.2d 789 (Tex.1966); Wesson v. Gillespie, 382 S. W.2d 921 (Tex.1964); Baylor University: Greenhill, Assumption of Risk, 16 Baylor L.Rev. 111 (1964).

Here we have a somewhat unusual situation in that deceased was taking no part in the refueling operation. Rather, he was standing in his yard, near the back door, watching and talking with Trexler. It is not contended that such action at the outset would support the necessary volenti findings that deceased knew, appreciated and thereby voluntarily exposed himself to a known and appreciated danger. Defendants assert, however, that when the safety valve popped off and the loud spewing noise started, deceased should have fled. Coleman's son testified that when he heard the loud noise, he called his dog and ran towards the front of the house. The record is not clear as to where the boy was playing prior thereto; but in any event, he only suffered a minor burn.

■ Plaintiff's basic complaint is that the *volenti* issues were not properly submitted in that there was no inquiry as to any specific danger which it is asserted was known, appreciated and voluntarily encountered by deceased. It is not enough that the injured party know that he is in a hazardous or dangerous undertaking. The burden is on the defendant to show that the injured party knew and appreciated the specific danger involved. Ellis v. Moore, supra; Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (Tex. 1953); Cantrell v. Markham & Brown

Company & Associates, 452 S.W.2d 940 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.).

Here there is only a general inquiry of a perilous condition caused by the escaping gas. The vice in this general inquiry is illustrated in part by the unknown factors heretofore set forth regarding the cause of the explosion. Obviously, the danger to deceased was not presented by the safety valve popping off and the gas starting to spew. This was the purpose of the valve and a signal for Trexler to stop the pump, which he promptly did. The spewing gas, being heavier than air, would first fill the hole in the ground around the valves before spreading out and becoming a danger elsewhere. Even after the pop-off valve failed to shut, it was necessary for the leaking gas to become ignited. The testimony of Trexler was that after the valve failed to close, he said to deceased: "We had better move on and get out of that area where it was popping." He further testified that the fire hit him in the face while "we were traveling away from it." Thus, it is seen that the condition presented to deceased was constantly shifting before the flash explosion.

In Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.1963), the Court, after recognizing that the *volenti* doctrine should be kept within justifiable limits, narrowed the dangerous activities (as contrasted with static conditions) to which one would voluntarily expose himself to those which, generally speaking, are rigidly circumscribed and easily predictable. See also Thomas v. T. C. Bateson Co., 437 S.W.2d 386 (Tex.Civ. App.—Dallas 1969, writ ref'd n. r. e.); Chickasha Cotton Oil Co. v. Holloway, 378 S.W.2d 695 (Tex.Civ.App.—Amarillo 1964, writ ref'd n. r. e.); Southern Methodist University: Greenhill, Assumed Risk, 20 Sw.L.J. 1, 13, 14 (1966). It cannot be said that a general inquiry regarding the perilous condition caused by escaping gas is within such prescribed limits.

We conclude that the trial court erred in not restricting the jury's inquiry

to a specific danger which deceased knew, appreciated, and to which danger he voluntarily exposed himself. This error goes to the heart of the affirmative defense asserted by defendants, and which is the basis of the court's take-nothing judgment. It accordingly requires a reversal of the judgment and remand of the case. It is therefore unnecessary to discuss the evidentiary points asserted by plaintiff.

The judgment of the trial court is reversed and the cause remanded.

CADENA, J., concurs in the result.