Francia K. WATSON, Guardian, etc., Appellant,

v.

PENCE CONSTRUCTION CORPORATION, Appellee.

No. 15670.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 27, 1970.

Rehearing Denied Jan. 7, 1971.

Foreman, Dyess, Prewett & Henderson, Houston, for appellant; A. D. Dyess, Houston, of counsel.

Fulbright, Crooker, Freeman, Bates & Jaworski, John C. Williams, Wm. H. Payne, Sandra K. Foster, Houston, for appellee.

COLEMAN, Justice.

This is a suit to recover damages sustained by reason of a fall from a building under construction. It is alleged that the fall resulted from a failure of the general contractor to furnish an employee of a subcontractor a safe place to work. The trial court withdrew the case from the jury and entered a judgment denying the injured employee recovery.

Pence Construction Company [1] negotiated a contract with Goodyear Rubber Company, or a subsidiary thereof, for the construction of a building on Harrisburg Boulevard near its intersection with Wayside Drive, in Houston, Harris County, Texas. Thereafter Pence negotiated subcontracts for certain phases of the work. Shelton W. Greer Company [1] entered into such a contract with Pence for the construction of the roof deck.

On June 24, 1966, the date of the accident resulting in this case, the exterior walls, bar joists and supporting members had been completed. A Greer crew had installed galvanized sheet decking over the bar joists the previous day. Travis H. Watson, in whose behalf this suit was instituted, was a foreman employed by Greer to supervise the pouring of vermiculite, an insulating light concrete material, over the corrugated metal decking. This material was pumped onto the roof and spread to the desired thickness. Members of the pouring, or pumping, crew were stationed on the ground as well as on the roof. The welding crew usually left unneeded sheets of metal on the roof to be removed by members of the pumping crew and by them returned to the Greer warehouse. On the day of the accident Watson went onto the roof to remove the sheets of metal and to check the progress of the work. Julius Castle was working as a screed setter on the roof.

A ladder was placed near the northwest corner of the building for use in climbing

1. Pence Construction Company and Shelton W. Greer Company will be referred to hereafter as "Pence" and "Greer" respectively.

to the roof. An opening two feet eight and one-half inches square for roof ventilation equipment was located about 24 feet from the north edge of the building and 11 feet from the west edge. The roof framing plan in evidence shows a building in the shape of a "T" having the dimensions shown on the following drawing.

[A3530]

Castle testified that he talked to Watson at a time when they were standing about six steps from the small opening at the pile of corrugated steel sheets. After Watson told him that his help in moving the metal sheets would not be needed, he turned and had taken about six steps toward the southeast corner of the building where he had been working when he heard someone on the ground level call out that a man had fallen. He then looked around. Watson was not visible. Two metal sheets were about two feet from the opening. He went to the opening and saw Watson lying on the floor beneath it. The small opening (numbered (1) on the drawing) was on a direct line from the stack of metal sheets to the ladder. The hole was framed with 3-inch angle iron.

Castle testified that he had not seen Watson in the immediate vicinity of the hole prior to the five minutes before the accident. He had seen him on the ladder earlier in the morning, but he went back down. After lunch Watson approached Castle on the roof and they went to the pile of metal sheets. He didn't know how long Watson had been on the roof before the accident, but it was possibly ten or fifteen minutes. That was the only time he saw Watson on the roof.

Castle testified that he had seen many openings in many roofs. At that time the openings were usually, but not always, covered with plywood sheets. The openings were not covered by the decking crew. The "construction department" had "carpenters on the job to do things like that." He said that once you climbed on the roof "some" of the openings were readily visible.

Dr. Tonn testified that it was his observation that some contractors covered roof openings and some didn't. It was his opinion that the openings could be covered in such a manner as not to interfere with the work at small expense.

There was no testimony that Watson ever actually saw the opening in the roof through which he fell. Mr. Fulfer, the division roof deck manager for Greer, did not know whether Watson had seen the roof plans or had gone over them with anyone. Greer was furnished a copy of the roof framing plan by Pence. It appears from the testimony of Mr. Fulfer and of Mr. Campbell, the field superintendent for Greer, that they were familiar with the plans and specifications, and, therefore, with the planned location of the open spaces. Since the sheet metal was installed by a Greer crew, some one or more of the Greer employees had actual knowledge of the location of the spaces and of the fact that they were not covered. There is no testimony that any supervisory employee 'had such actual knowledge.

To sustain the judgment appellee primarily relies on the fact that the roof plans furnished by Pence to Greer showed the opening through which Watson fell. Appellee cites Delhi-Taylor Oil Corporation v. Henry, 416 S.W.2d 390 (Tex.1967) for the proposition that a general contractor can discharge his duty to warn employees of his subcontractors of a dangerous condition located on the project by "transmitting information of these dangers" to their supervisory employees. As the court points out in Delhi-Taylor, the law is well established that an owner or occupier of land may relieve himself of liability for harm to his invitees from dangerous conditions on the premises which are not open and obvious by warning them thereof or by taking proper precautions to protect them from the dangers; and that the owner or occupier owes no duty to his invitees either to eliminate or to warn of dangerous conditions on the premises which are as well known to them as they are to him.

In Delhi-Taylor the court said:

"* * * While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge

by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees."

■ Where the owner or occupier of premises puts some other person in control of the premises or a part of them, such person must assume the same duty toward invitees as the law places on the owner or occupier. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425 (1950).

Three openings in the floor deck were shown on the plans. The employees who installed the metal sheets had actual knowledge of the existence and location of these openings. The evidence does not reveal whether or not Watson's superiors had any knowledge of the openings other than that gained from the plans. There is no evidence that their attention was directed specifically to the dangerous situation by Pence.

■ Knowledge of the defect alone would not bar a recovery by Watson. There must be knowledge and appreciation of the danger involved. In Delhi-Taylor the contractor and his foreman, in addition to having knowledge of the existence of the gas lines, were warned that the lines should be treated "as though they were loaded". They knew of the particular danger involved in the work to be done.

In Scott v. Liebman, 404 S.W.2d 288 (Tex.1966), the plaintiff knew there was a glass door. He did not know that in the nighttime he would be unable to determine whether the door was open or closed. It was not shown that he had observed the closed door at night so many times that he should be charged with knowledge and appreciation of the danger as a matter of law. The court suggested that the occu-

pier's duty to an invitee would be discharged by (1) actual knowledge of the condition, plus knowledge and appreciation of the danger; (2) constructive or charged knowledge and appreciation of the danger, either because the danger was patently obvious or because of repeated exposures to the dangerous condition; or (3) by a warning sufficient to give him, not only knowledge of the condition, but also an appreciation of the danger.

In Thomas v. T. C. Bateson Company, 437 S.W.2d 386 (Tex.Civ.App.—Dallas 1969, writ refused, n. r. e.), the employee of a subcontractor backed a buggy off a ramp into a stairwell. The court held that the plaintiff knew or could be charged with knowledge of the existence of the stairwell,[2] but the court refused to hold that he knew and appreciated the risk of the buggy slipping on wet cement so as to plunge off the narrow ramp into the stairwell. Although the plaintiff had made two previous trips there was no evidence that he knew cement had been spilled on the ramp causing a slippery condition. The court would not say as a matter of law that he knew and appreciated the danger caused by the spilled cement, the elevated ramp, the fact that the buggy could not turn around, and the fact that the ramp was only two inches wider than the buggy at the place of the accident. In this case the wet cement must have fallen from the buggies operated by the plaintiff and his fellow employees.

Watson had looked over the roof one time from a position on the ladder. Even though he looked in the direction of the small hole, if his head was only a few inches above the roof deck, he could not have seen it. It may well be that his attention was directed at another area of the roof during the entire period of time he was on the roof deck prior to his accident.

2. He must have known that if he fell down the stairwell from the fourth floor he would be injured.

There is no evidence to warrant a finding that Watson had actual knowledge of the existence of the particular opening involved in the accident or that he had been exposed to the condition on so many occasions that he should be charged by law with knowledge of its existence. Nor does the evidence support a finding that the danger was so open and obvious that Watson should be charged with appreciation thereof by reason of the fact that his superiors in the company were furnished a copy of the plans and specifications for the roof deck.

There was evidence such openings were usually or sometimes covered. Whether or not the openings would be protected on this occasion was not revealed by the plans.

The testimony shows just before the accident Watson was probably engaged in moving unneeded metal sheets from a stack on the roof deck to a position near the ladder. This required that he pass very near or over the unprotected opening. The opening was framed with metal projecting three inches above the surface. The sheets of metal weighed about twenty-five pounds each. The danger was caused by the necessity for carrying unwieldy material on a path near the unprotected opening having the metal framing projecting upward. The danger was not so open and obvious that Watson must necessarily have appreciated it. There is no evidence that he actually knew and appreciated the danger resulting from this particular combination of circumstances.

There was evidence which, if believed, established the duty of appellee, the general contractor, to protect his invitee from a dangerous condition of the premises, a breach of that duty, and injury proximately caused thereby.

The judgment of the trial court is reversed and the cause is remanded.