**Charles L. MYERS, Plaintiff-Appellant,**

v.

**DAY & ZIMMERMANN, INC.,
Defendant-Appellee.**

**No. 28157.**

United States Court of Appeals,
Fifth Circuit.

June 3, 1970.

John D. Raffaelli, Texarkana, Tex., for appellant.

Norman C. Russell, Texarkana, Tex., for appellee.

Before RIVES, GEWIN and INGRAHAM, Circuit Judges.

GEWIN, Circuit Judge:

Charles L. Myers appeals from an adverse judgment in his diversity action brought against Day & Zimmermann, Inc., the occupier of the premises on which he was allegedly injured. Myers contends that the district court erred in instructing the jury on the Texas doctrines of *volenti non fit injuria* and "no duty", urging that there was no evidence in the record to warrant either charge. We reverse.

At the time of the alleged accident, Myers was employed by the United States as a relief railroad conductor at the Red River Army Depot in Bowie County, Texas. Adjacent to this installation is the Lone Star Ordinance Plant, which manufactures munitions under a government contract, and is operated by Day & Zimmermann.[1] The two facilities contain connected systems of railroad trackage. Day & Zimmermann owns no

1. A Maryland corporation with its principal place of business in Philadelphia, Pennsylvania.

railroad equipment, and pursuant to a contract with the United States, government equipment and employees are used to effect any necessary movement of rail cars within the Lone Star plant. However, Day & Zimmermann is responsible for the maintenance of the Lone Star trackage.

On the night of 8 February 1967, Myers was conductor of a crew sent to move two box cars located on the Lone Star premises. Inside the plant, Myers alighted from the engine, on which he was riding, in order to inspect the cars. While walking along a foot path parallel to the tracks, he allegedly stepped into a hole and sustained injury. Myers testified that he had a lantern with him, which he was using to examine the cars, but that its light was not directed toward the path and he did not see the hole. He testified to general familiarity with the area and stated that he had never seen a hole in the path before.

Alvin Parr, a member of Myers's crew on the evening in question, testified that he saw Myers with his leg in the hole. He also stated that he had not previously observed holes in this area. James Elliott, another government employee, stated that while he did not witness the alleged accident or see this particular hole, he had seen similar holes in the area on previous occasions. He said that the holes were caused by the construction and removal of temporary docks. Two other witnesses, employees of Day & Zimmermann, testified that there was no hole in the area.

Myers alleged that he suffered personal injury proximately caused by Day & Zimmermann's negligence in creating

and leaving the hole in the footpath and in not warning him of its presence. Day & Zimmermann defended on alternative theories contending: (1) there was no hole on its premises; or (2) if there was a hole, (a) Myers voluntarily exposed himself to the hazard, (b) he was contributorily negligent in failing to keep a proper lookout, or (c) he was owed no duty since the hole was an "open and obvious" danger. The district court submitted the case to the jury on a general charge.

■■ Texas recognizes two theories, apart from contributory negligence, which can support a denial of liability in a suit by an invitee against the occupier of land. The first, peculiar to the invitee's suit, provides that an occupier owes "no duty" with respect to hazards which are "open and obvious." The other is the Texas doctrine of *volenti non fit injuria,* voluntary encountering of risk.[2] The district court charged the jury on both doctrines, and Myers contends that the charges were without basis in the evidence and were erroneous.

### *Volenti*

The Texas *volenti* doctrine takes its name from the maxim of the common law that "he who consents cannot receive an injury."[3] It is regarded as a possible defense in all negligence actions.[4] In J. & W. Corp. v. Ball,[5] the Texas Supreme Court listed the elements of *volenti*:

(1) The plaintiff has knowledge of facts constituting a dangerous condition or activity; (2) he knows the condition or activity is dangerous; (3) he appreciates the nature or extent

---

2. McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); J. & W. Corp. v. Ball, 414 S.W.2d 143 (Tex.1967).

3. Black's Law Dictionary 1746 (4th ed. 1951).

4. The common law, generally applied, treats *volenti non fit injuria* as a defense to intentional torts, and gives effect to the same policy in negligence actions through the doctrine of "assumption of risk". W. Prosser, Torts § 18 at 82

(2d ed. 1955). However, Texas applies "assumed risk" only in master-servant and some other contractual relationships. In other negligence actions, "assumed risk" situations are governed by the unique Texas *volenti* doctrine. Halepeska v. Callihan Interests, Inc., 371 S. W.2d 368, 377 (Tex.1963); See W. Prosser, *supra* § 55 at 304.

5. 414 S.W.2d 143, 146 (Tex.1967).

of the danger; and (4) he voluntarily exposes himself to this danger.

■ *Volenti* is an affirmative defense. Thus, Day & Zimmermann had the burden of proving all of the essential elements of its requirements.[6] The crux of the defense is knowledge and appreciation; which must be actual, or such as may be charged in law from facts found to have been known by the plaintiff. The Texas Supreme Court has expressly held that *volenti* is not established by a finding that the plaintiff *should* have known and appreciated the danger in the exercise of ordinary care.[7]

Both Myers and Parr claimed that they saw the hole in question following the accident but that they had not seen holes in the area before, Parr testified that he had been in the same area, during daylight hours, either the day of the accident or the day before. Elliott stated that he had observed holes in the area prior to the accident but that he was last in the area some ninety days before the alleged injury. Both of Day & Zimmermann's witnesses denied the existence of the hole. This evidence does not warrant a holding that Myers was charged as a matter of law with knowledge and appreciation of the danger in the pathway. If *volenti* is available, it must rest on Myers's actual knowledge of the hazard.

■■ In assigning evidentiary support for the *volenti* charge, Day & Zimmermann relies principally on the testimony of Myers himself, urging that the jury was entitled, to judge his credibility. In this regard, it cites a statement by the Texas Supreme Court in Halepeska v. Callihan Interests, Inc. that:

> [I]n both the "no duty" and *volenti* situations, whether he [the plaintiff] *actually* knows and appreciates the danger may be for the jury to pass upon *despite his testimony that he did not*. His credibility may be for the jury.[8]

Of course, a plaintiff may not foreclose either inquiry by his denial of knowledge and appreciation, but the possibility that the jury may disbelieve his testimony is not evidence of the contrary proposition. In Rice v. Gulf States Paint Co.,[9] a painter alleged that he was injured while using a toxic waterproofing product sold by the defendant company. The trial court entered judgment for the defendant on a special finding by the jury that the painter knew and appreciated the danger involved in using the waterproofing. Reversing the judgment, the Texas Court of Civil Appeals stated:

> The only evidence bearing upon the issue of whether Rice actually knew and fully appreciated the danger involved in using the waterproofing product came from Rice. * * * Appellee says that because Rice is an interested witness, his credibility should be submitted to the jury. That is a correct general rule. However, the volenti doctrine is an affirmative defense. Gulf States pleaded it and had the burden of raising the issues by the testimony of Rice or produce such facts as would in law charge him with knowledge of the danger and apprecia-

---

6. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 379 (Tex.1963). Also see Rice v. Gulf States Paint Co., 406 S.W.2d 273 (Tex.Civ.App.1966), quoted *infra*.

7. In Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 379 (Tex.1963), the court stated:
   > [T]he test in contributory negligence is generally objective: should plaintiff, as an ordinary, prudent person, have known by the exercise of ordinary care. The test in "no duty" and *volenti*, however, is subjective: did plaintiff know and appreciate.

The court further explained the actual knowledge and appreciation requirement of *volenti*:
> [W]hile the cases speak of the requirement of *actual* knowledge and appreciation, the plaintiff may not close his eyes to obvious dangers; and he may not recover where it is shown that he is in possession of facts from which he would be legally charged with appreciation of the danger.

8. 371 S.W.2d 368, 379 (Tex.1963) (emphasis added).

9. 406 S.W.2d 273 (Tex.Civ.App.1966).

tion thereof. Gulf States does not here contend that Rice should be charged as a matter of law with knowledge and appreciation. Rice did not testify to any facts which could be construed to mean that he knew and appreciated the danger. Therefore, there is no evidence to support the answers of the jury.[10]

We must likewise conclude that there was no evidence in the present case to show that Myers knew of or appreciated the hazard either actually or as a matter of law. While the facts might, on proper instructions, support a jury determination that Myers, "in the exercise of ordinary care, should have known and appreciated the danger;" such a finding will not make out the volenti defense.[11] Consequently, the submission of this charge was improper.

### "No Duty"

■ Texas requires the occupier of premises to keep them in reasonably safe condition for his invitees. He is obliged to inspect and discover hazardous conditions. With respect to those dangers of which he is aware, or should be aware because of his obligation to inspect, he has a *duty* "to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof." However, this duty does not extend to defects which constitute "open and obvious" dangers— hence the "no duty" principle.[12]

■ The exception rests on the proposition that there could be no obligation to warn a person of something he already knows or of a danger so apparent that he will be charged with knowledge as a matter of law. In the "no duty" situation, as in *volenti,* knowledge either actual or charged in law, is crucial. But, there is one distinction between the doctrines which must be noted: the proof of "no duty" is not a burden of the

defense. Here the burden is on the plaintiff. In Halepeska v. Callihan Interests, Inc.,[13] the court stated:

[I]n a suit by an invitee against the occupier, the invitee must not only prove that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, but he must also prove, as part of the plaintiff's case, that the occupier owed him a *duty* to take reasonable precautions to warn him or protect him from such danger, i. e., the plaintiff must negative "no duty."

Thus, in considering the propriety of a "no duty" charge the focus of the inquiry will be different. It is not the defendant's burden to raise the question, but the plaintiff's burden to foreclose it.

■ In charging the jury the district court stated in part:

But if there are open and obvious dangers *of which the invitees know,* or *of which they are charged with knowledge,* then the occupier owes them no duty to warn or to protect the invitees. (Emphasis added.)

In spite of the different focus, we consider our discussion of actual knowledge in relation to *volenti* dispositive as to that portion of the present charge. As was noted, there is absolutely no evidence that Myers was actually aware of the existence of the hole. The evidence indicates that he was not aware of its existence. In this regard Myers's negative burden was met, as it were by default, since there was no evidentiary conflict on the question of his actual knowledge appropriate for resolution by the jury.

■ We are further of the opinion that whether the hole constituted such an apparent hazard as to charge Myers with knowledge as a matter of law was a question for the court and should not

---

10. *Id.* at 275.

11. See note 7 *supra.*

12. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378 (Tex.1963).

13. *Id.*

have been submitted to the jury.[14] Justice Greenhill, the author of the *Halepeska* decision, has stated: [15]

"Logically, whether a defect is so plain that any one should see it is a law question. In each of the cases mentioned above [16] (all written or approved by the Supreme Court), the question was held to be one of law, and the cases were disposed of on instructed verdict or by some similar device."

Allowing the jury, on a general charge to determine whether a plaintiff is charged with knowledge of a defect, involves the risk that the jury will consider this an invitation to decide that the plaintiff "should have known" of the defect.[17] In discussing prior "no duty" cases the court in *Halepeska* stated:

In none of the above cases has it been held that fact findings that the plaintiff, in the exercise of ordinary care, (1) should have known and (2) should have appreciated, the danger, will defeat a recovery in the "no duty" concept. In each of them, there have been findings that the plaintiff *knew and appreciated*, or that as a matter of law he was charged with knowledge and appreciation. In the sense that he is charged, in law, with knowledge and appreciation, the plaintiff "should have known" and "should have appreciated." But there has been no inquiry of the jury whether the plaintiff, in the exercise of ordinary care, should have known and appreciated.[18]

The Texas courts have recognized that their endemic, "assumed risk" doctrines are harsh principles, which may defeat recovery without considering the justification for the plaintiff's conduct or its causal relationship to the injury. We are directed to keep them within reasonable bounds.[19] Our review of the present case convinces us that if Myers's conduct is to be considered by the jury as a possible bar to recovery, it must enter that consideration properly framed in the context of contributory negligence.[20]

The giving of unwarranted jury instructions is error.[21] In the present case, Myers made timely objection to the instructions which we have found to have been improperly given. Since the jury returned a general verdict for the defendant, it is impossible to determine the effect of the erroneous instructions. We are obliged to reverse the judgment and remand the case for a new trial.[22]

Reversed and remanded.

14. The evidence showed that the alleged injury occurred at night on an unlighted footpath. If the hole existed, the testimony indicated it was from 10 to 20 inches in diameter. Under these facts and in these circumstances, it seems impossible to conclude that it was so open and obvious a danger as to charge Myers with knowledge as a matter of law.

15. Greenhill Assumption of Risk, 28 Tex. B.J. 21 (1965), quoted in Spring Branch Bank v. Wright, 404 S.W.2d 659, 662 (Tex.Civ.App.1966).

16. Hausman Packing Co. v. Badwey, 147 S.W.2d 856 (Tex.Civ.App.1941) ; A. C. Burton Co. v. Stasny, 223 S.W.2d 310 (Tex.Civ.App.1949) ; Houston Nat'l Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948); Marshall v. San Jacinto Bldg., Inc., 67 Tex.Civ.App. 372 (Tex.Civ.App. 1933).

17. The Texas courts solve this problem by the use of special interrogatories. A court may thus submit to the jury the factual question of actual knowledge of the defect, or knowledge of particular facts, reserving to itself the legal conclusions to be drawn therefrom.

18. 371 S.W.2d 368, 383–384.

19. Ellis v. Moore, 401 S.W.2d 789, 792 (Tex.1966).

20. *See* Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953) ; Spring Branch Bank v. Wright, 404 S.W.2d 649 (Tex.Civ.App.1966).

21. Jackson v. Southern Ry., 317 F.2d 532, 537 (5th Cir. 1963).

22. Lyle v. Bentley, 406 F.2d 235, 327–328 (5th Cir. 1969) ; Louisiana & Ark. Ry. v. Hughes, 374 F.2d 106, 108 (5th Cir. 1967).