A. L. MESSICK and wife, Elma Messick,
Plaintiffs-Appellees,

v.

GENERAL MOTORS CORPORATION,
Defendant-Appellant.

No. 71–1811.

United States Court of Appeals.
Fifth Circuit.

May 22, 1972.

Rehearing and Rehearing En Banc
Denied July 11, 1972.

John G. Tucker, Orgain, Bell & Tucker, Beaumont, Tex., for defendant-appellant.

Sidney S. Stover, Seale & Stover, Jasper, Tex., for plaintiffs-appellees.

Before TUTTLE, INGRAHAM and RONEY, Circuit Judges.

INGRAHAM, Circuit Judge:

The invocation of federal diversity jurisdiction brings us to consider the instant products liability action brought by plaintiffs-appellees against defendant-appellant General Motors Corporation. The undisputed facts on appeal are that Messick had purchased a new 1969 Oldsmobile from appellant's agent on September 5, 1969. The automobile ran off the road in a one car accident on January 11, 1970. Appellees sued General Motors to recover damages for their resulting personal injuries.

In the four months that Messick owned the Oldsmobile before the accident, he had used the car in his business and had run the odometer to a reading of over 15,000 miles. In the same four months period he had taken the automobile in for repair at least eight times in an attempt to correct two defects.

From the first the Oldsmobile had an acute front-end vibration problem which was exacerbated by driving at speeds in excess of 50 miles per hour. Messick also had difficulty in keeping the car on the road surface when driving over a bump or encountering roughness. The latter defect manifested itself by the car veering to the right or the left of the direction of travel. It could be driven with safety only with the utmost caution and held to a rough road only by main strength.

In the repeated attempts to ameliorate the defects the dealer's mechanics found the Oldsmobile to have two warped rear wheels and a warped axle. Replacement of these parts reduced the vibration, but did little for the steering problem which the mechanics were unable to explain or repair. Messick then took the automobile to a private mechanic. After examining the vehicle the mechanic informed Messick that in his opinion, if Messick continued to drive the car in its present condition, it was going to kill him. Messick thereupon made a demand upon General Motors to replace the automobile and he had received no reply at the time the car ran off a fog-shrouded road resulting in the injuries sustained.

Plaintiffs filed suit in the federal district court alleging diversity of citizenship. The complaint asserted two separate theories of recovery. Their first count alleged that defendant's negligent design and inspection of the steering and suspension mechanisms were the proximate cause of the accident.[1] Their second count was in strict liability in tort, asserting that the damages were produced by a defect in the steering and suspension systems which rendered the Oldsmobile unreasonably dangerous.[2] Since the suit was brought in federal

1. Texas has apparently adopted a form of strict liability in defective design cases; see Garcia v. Sky Climber, Inc., 470 S.W. 2d 261 (Tex.Civ.App., Corpus Christi, 1971); writ ref. n. r. e.; Pizza Inn, Inc. v. Tiffany, 454 S.W.2d 420 (Tex.Civ. App., Waco, 1970); no writ hist., applying strict liability for defects of design;

compare Ward v. Hobart Mfg. Co., 450 F.2d 1176 (5th Cir., 1971) with Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir., 1968).

2. See Darryl v. Ford Motor Co., 440 S.W. 2d 630 (Tex.Sup., 1969); Jack Roach v. Pulaski, 417 S.W.2d 262 (Tex.Sup., 1967).

court, we are *Erie* bound to apply the underlying state law, that of the State of Texas.

Texas has long since proved the wisdom of our *Erie* prognostication in Putnam v. Erie City Manufacturing Co., 338 F.2d 911 (5th Cir., 1964), and adopted the position of the Second Restatement of the Law of Torts § 402A imposing strict liability on the manufacturer of any defective product which causes physical harm to persons. Shamrock Fuel & Oil Sales Co. v. Tunks, 416 S.W.2d 779 (Tex.Sup., 1967); McKissen v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup., 1967). On this appeal it is undisputed that plaintiffs' complaint stated and the evidence later proved a cause of action in strict liability.[3] The principal issue on appeal is whether relief should have been denied as a matter of law because of the plaintiffs' contributory negligence in continuing to use the product while knowing of its defective condition and the danger involved.[4]

Defendant asserts as error the district court's refusal to grant a directed verdict in its favor on the defense of *volenti non fit injuria* as defined by the Texas Supreme Court in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (1963). In General Motor's view the *volenti* defense was established as a matter of law by the plaintiff Messick's testimony that he knew of the facts which constituted the dangerous condition or defect; that he knew the condition or activity to be dangerous and appreciated the nature or extent of the danger. The testimony at issue was as follows:

"Q Now, after you purchased that car, Mr. Messick, did you have any trouble with it?

"A Yes, sir.

"Q What was the trouble? Describe it for us.

"A Well, the first day we drove the car or I drove the car it had a terrific vibration and didn't want to stay on the road.

"Q What are you talking about, 'Didn't want to stay on the road'?

"A It wanted to dart from one side to the other.

"Q Did you make any effort to correct that condition?

"A Yes, sir, I did."

\* \* \* \* \* \*

"Q Now, the difficulty that you have described about driving this car, did it continue up until the time of the accident?

"A Yes, sir.

"Q Did it ever get any better, Mr. Messick?

"A No, sir.

"Q Did you know it was dangerous?

"A Yes, sir."

\* \* \* \* \* \*

"Q Now, the other trouble you say is a trouble of steering the car?

"A Yes, sir.

"Q Or keeping it on the road?

"A Yes, sir.

"Q Did you find that that was such that you couldn't drive it safely over fifty miles an hour?

"A Yes, sir.

"Q I believe when your deposition was taken you said in order to keep it on the road you had to keep it down below fifty. Is that right?

3. The mere allegation of a defective product and an injury does not establish a cause of action against the manufacturer even in a strict liability state. Here, however, the plaintiffs produced uncontroverted evidence of an unrepaired original manufacturing defect in the front suspension system of the car. Plaintiffs introduced the testimony of the dealer who sold the car and of the mechanic who repeatedly serviced it in vain attempts to correct the defect. Both were qualified as expert witnesses, Sharp v. Chrysler Corp., 432 S.W.2d 131 (Tex.Civ.App., 14th, 1968); writ ref'd n. r. e., and testified that in their opinion the Oldsmobile ran off the road as a consequence of its defective suspension system.

4. Defendant disingenuously argues that Messick is absolutely barred from recovery due to his continued use of the product, and further argues that Messick was required to tender the automobile and seek relief through the law of sales.

"A  Yes, sir.

"Q  At the time of the accident you were going fifty-five?

"A  Yes, sir.

"Q  Now, the steering trouble, you say it would dart and weave, go off first one side and then the other?

"A  Yes, sir.

"Q  And when you took it in to the —is that Beaumont Frame?

"A  Yes, sir.

"Q  They told you it was dangerous to drive it?

"A  Yes, sir.

"Q  Who did you talk to at Beaumont Frame?

"A  A Mr. Davis that's the manager, may be the owner.  I don't know.

"Q  He told you, did he not, it was so dangerous that he wouldn't drive it?

"A  Yes, sir.

"Q  About how long before this accident was it that you got that information?

"A  I don't really recall, because I don't recall the date I took it to him.

"Q  Did you tell Mr. Howard it was so dangerous it was going to kill you?

"A  Yes, sir.

"Q  You knew that?

"A  Yes, sir.

"Q  You knew that on the evening that this accident happened?

"A  Yes, sir.

"Q  You knew the car that you were taking this trip in that Saturday night was in such a dangerous condition that you had reported it was going to kill you if it wasn't fixed?

"A  Yes, sir.

"Q  And that it was going to kill you because it might run off the road and hit something?

"A  Yes, sir.

"Q  That's exactly what happened, isn't it?

"A  Yes, sir.

A *volenti* defense as defined by the Texas Supreme Court in *Halepeska, supra,* is sharply distinguished from the defenses of contributory negligence and of an open and obvious defect which imposes no duty.[5]  Myers v. Day & Zimmerman, 427 F.2d 248 (5th Cir., 1970). The Texas *volenti* doctrine has four elements:  (1) the plaintiff has knowledge of facts constituting a dangerous condition or defect;  (2) he knows the condition or activity to be dangerous;  (3) he appreciates the nature or extent of the danger;  and (4) he voluntarily exposes himself to this danger.  The Texas courts require the *volenti* defense be established on a subjective standard.  J. & W. Corp. v. Ball, 414 S.W.2d 143, 146 (Tex.Sup., 1967).  Both parties agree that Messick's testimony established his subjective knowledge and appreciation of the first three elements of *volenti.* General Motors asserts that the fourth element—voluntary exposure—was established by the plaintiff's volitional act of driving the car.  Under its theory, Messick is completely barred from recovery under both the negligence and strict liability counts.  Messick asserts that the question of voluntariness was one for the jury when he introduced evidence of his dependence on an automobile to procure his livelihood, and when he testified to his economic inability to purchase a second car while continuing to pay off the Oldsmobile which the dealer and manufacturer refused to exchange.  Messick asserts that the jury

---

5.  In Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup., 1963), the court said:

"* * * The test in 'no duty', and *volenti,* however is subjective:  did plaintiff know and appreciate.  Comment 'c' § 496D of the Proposed Restatement of Torts, Second, supra, footnote 3, states, 'The standard to be applied is a subjective one, of what the particular plaintiff in fact see, knows, understands and appreciates.  In this it differs from the objective standard which is applied to contributory negligence.' "

was properly charged on this element on an objective standard.

As to Messick's negligence theory of recovery, General Motor's contentions are a correct statement of Texas law. There is no longer any doubt that in Texas *volenti* is applicable to actions in negligence, Rabb v. Coleman, 469 S.W.2d 384 (Tex.Sup., 1971). Nor is there an element of duress of economic circumstance available to plaintiff in a negligence action. McKee v. Paterson, 271 S.W.2d 391 (Tex.Sup., 1954). Moreover, the reasonableness of the undertaking is not available to relieve a plaintiff from the application of the doctrine. As the court stated in *Halepeska*:

"A basic difference between contributory negligence on the one hand, and 'no duty' and *volenti* on the other, is the question of justification. Whether the plaintiff's conduct was justified may be an evidentiary consideration in deciding that a person of ordinary prudence should, or should not have so acted, but it is not a separate ultimate inquiry or issue. The question of plaintiff's justification is not ordinarily involved in the 'no duty' concept. A person may voluntarily expose himself to a known risk and *not* be contributorily negligent, depending upon why he exposed himself; i. e., his conduct may have been that of an ordinary prudent person under the circumstances. For example, a mother going into a burning building to save her child, or a person crossing a defective bridge when it is the only way of travel. Gulf, C. & S. F. Ry. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227 (1888). On the other hand, if the occupier owes 'no duty' to the invitee because the invitee knows and appreciates the danger, or if the plaintiff deliberately and voluntarily encounters a known risk under the *volenti* doctrine, the plaintiff cannot recover. There may be some exceptions, such as where the plaintiff is motivated by humanitarianism or rescue impulses. Sinclair Refining Company v. Winder, 340 S.W.2d 503, Tex. Civ.App.1960, writ refused. And see Restatement of Torts, § 893."

We now turn to a consideration of whether Messick's strict liability action was also barred by the harsh doctrine of *volenti*. Ellis v. Moore, 401 S.W.2d 789 (Tex.Sup., 1966). If the doctrine would be strictly applied by the Texas courts to such actions, then the result would be that reached in consideration of plaintiff's action in negligence and the judgment for plaintiff should be reversed. The question, however, of whether *volenti* as defined in *Halepeska*, or something like *volenti* but with an element of reasonableness or justification for the continuation of the use was left open in the products case. *Shamrock, supra,* at 785; McDevitt v. Standard Oil Co. of Texas, 391 F.2d 364 (5th Cir., 1968).[6]

Defendant asserts that the Texas courts have submitted products cases in which the defense raised *volenti* to the jury without any statement or instruction permitting a plaintiff to recover if his action was reasonable under the circumstances. General Motors particularly refers to Texas Bitulithic Co. v. Ca-

---

6. In *McDevitt* this court was considering the applicability of a contributory negligence defense of misuse of the product. The court, while concluding that the Texas courts would recognize a defense of misuse to a strict liability action, stated:
   "It is evident from these two decisions (*Shamrock* and *McKisson*) that the Supreme Court of Texas did not decide that contributory negligence is never a defense to a strict liability action, but limited its holding to the principle that one who is contributorily negligent in failing to discover a defect in a product is not barred from recovery. The question of whether that species of contributory negligence variously referred to as 'misuse', 'improper use', 'voluntarily proceeding to encounter a known risk' or any other of the myriad synonyms used by various courts and writers constitutes defensive matter to such an action was expressly left open." 391 F.2d at 369.
   The same result was intimated in Ross v. Up-Right, Inc., 402 F.2d 943 (5th Cir., 1968).

terpillar Tractor Co., 357 S.W.2d 406 (Tex.Civ.App., Dallas, 1962); writ ref'd n. r. e.; McGinty v. Motor Truck Equipment Corp., 397 S.W.2d 263 (Tex.Civ. App., Dallas, 1965), no writ hist.; and Rice v. Gulf States Paint Co., 406 S.W. 2d 273 (Tex.Civ.App., Eastland, 1966), writ ref'd n. r. e. None of these cases, however, was decided after the Texas Supreme Court adopted the Second Restatement of Torts strict liability approach to products cases in *Shamrock* and *McKissen*. The *Caterpillar* case turned on the application of *volenti* in the context of master-servant. The *McGinty* case raised the *volenti* issue in the context of an action in negligence. In *Rice*, the volenti issue was again raised in the context of master-servant relations. We do not believe that the Texas courts would find these pre-*Shamrock-McKissen* cases controlling. See *Shamrock*, 416 S.W.2d 779 at note 5.

Perhaps recognizing that these decisions were not controlling, General Motors additionally asserts that the Texas Supreme Court's recent decision in Rabb v. Coleman, 469 S.W.2d 384 (1971), holding *volenti* applicable to actions in negligence, should be given controlling import in consideration of a strict *volenti* defense to products cases after *Shamrock*. We cannot agree. The court in *Rabb* stated:

"Volenti is an affirmative defense to any negligence action in which the defendant is responsible for a dangerous condition (static or non-static) or activity of which the plaintiff knows, appreciates the danger and voluntarily exposes himself thereto. It is a separate concept from 'no duty' and the applicability of one is not determined by applicability of the other. *Accord*, Halapeska v. Callahan Interests, Inc., 371 S.W.2d 368 (Tex.Sup. 1963). We hold that volenti non fit injuria was available to petitioner as a defense in this case." 469 S.W.2d at 387.

This naked holding does not control our *Erie* ruminations on the Texas defenses to products cases. *Rabb* was an action

in negligence brought by the widow of a householder who was killed when propane-butane gas escaped from an underground tank being filled by the defendant as the decedent watched. The trial court entered a take nothing judgment based on the affirmative defense of *volenti*. The court of civil appeals reversed on the grounds that the trial court's submission of the *volenti* defense was overly broad. That court, in reversing, said:

"In Hernandez v. Heldenfels, 374 S. W.2d 196 (Tex.1963) the Court, after recognizing that the *volenti* doctrine should be kept within justifiable limits, narrowed the dangerous activities (as contrasted with static conditions) to which one would voluntarily expose himself to those which, generally speaking, are rigidly circumscribed and easily predictable. See also Thomas v. T. C. Bateson Co., 437 S. W.2d 386 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.); Chickasha Cotton Oil Co. v. Holloway, 378 S.W.2d 695 (Tex.Civ.App.—Amarillo 1964, writ ref'd n. r. e.); Southern Methodist University: Greenhill, Assumed Risk, 20 Sw.L.J. 1, 13, 14 (1966). It cannot be said that a general inquiry regarding the perilous condition caused by escaping gas is within such prescribed limits." Rabb v. Coleman, 461 S.W. 2d 431, 434 (Tex.Civ.App., San Antonio, 1970).

The Supreme Court, in reversing the court of civil appeals, directed its language previously quoted (469 S.W.2d at 387) toward clarifying two elements: that a right to occupy premises does not of itself free a plaintiff from defensive counter-attack on *volenti* grounds; *Rabb, supra,* at 386; compare Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex. Sup., 1963); and that the danger appreciated and the danger which caused the injury need not be identical. *Rabb, supra,* at 388. But, see the dissent of Justice Steakley, 469 S.W.2d at 388, and Ellis v. Moore, *supra. Rabb* alone does not hold *volenti* as defined in *Halepeska* applicable to a strict liability action—an

action in tort but not sounding in negligence. Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828 (1942). We return, therefore to the well-spring of Texas products liability—the companion cases of *Shamrock* and *McKissen*.

The Texas Supreme Court in *Shamrock* adopted the formulation of strict liability proposed by the Second Restatement of Torts § 402A. The court there, after applying strict liability, held that the contributory negligence of a plaintiff which consisted of failing to discover the defect which ultimately injured him was not a defense. In the context of discussing whether continued use of a product, knowing it to be both defective and dangerous, was a defense, the court quoted Dean Prosser:

" 'There has been ostensible, and quite superficial, disagreement over whether contributory negligence is available as a defense where the action is one for breach of warranty. A few decisions have said flatly that it is not. The greater number have said quite as flatly that it is. The conflict is, however, more apparent than real. If the cases are examined, it readily appears that those which refuse to allow the defense have been cases in which the plaintiff negligently failed to discover the defect in the product, or to guard against the possibility of its existence. They are entirely consistent with the general rule that such negligence is not a defense to an action founded upon strict liability. Those which have permitted the defense all have been cases in which the plaintiff has discovered the defect and the danger, and has proceeded nevertheless to make use of the product. They represent the form of contributory negligence which consists of deliberately and unreasonably proceeding to encounter a known danger, and overlaps assumption of risk. They are quite consistent with the general rule that this is a defense to strict liability. There are only a few cases which have recognized the distinction; but it seems quite clear that it is made in

fact.' (Prosser, Law of Torts [3d Ed.] 656.)"

The court then, at least impliedly, adopted comment (n) to § 402A. The language employed by comment (n) is that of the unreasonableness of the continued use:

"Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless *unreasonably* proceeds to make use of the product and is injured by it, he is barred from recovery." (Emphasis added.)

Dean Prosser explained that the element of unreasonableness entered into a case in one of two ways—either as an express instruction on a reasonably prudent man standard, or in the jury's consideration of the voluntariness of the continued use:

"It frequently is said that the contributory negligence of the plaintiff is not a defense in cases of strict liability. This involves the seemingly illogical position that the fault of the plaintiff will relieve the defendant of liability when he is negligent, but not when he is innocent. The explanation of an unreasonable risk to others by abnormal conduct which is inherent in most of the strict liability cases; and in part in the policy which places the absolute responsibility for preventing the harm upon the defendant, whether his conduct is regarded as fundamentally anti-social, or he is considered merely to be in a better position to transfer the loss to the community * * * At the same time, the defense which consists of voluntarily

and unreasonably encountering a known danger, and in negligence cases passes more or less indiscriminately under the names contributory negligence and assumption of risk, will, in general, relieve the defendant of strict liability. Here, as elsewhere, the plaintiff will not be heard to complain of a risk which he has encountered voluntarily, or brought upon himself with full knowledge and appreciation of the danger * * * Upon this basis, the kind of contributory negligence which consists of voluntary exposure to a known danger, and so amounts to assumption of risk, is ordinarily a defense * * * The plaintiff's appreciation of the risk, and his voluntary consent to encounter it, will often be a jury question and juries frequently are reluctant to find that a true consent has been given."

Prosser, The Law of Torts, 3rd Ed., pp. 538–540.

Accord, Texsun Feed Yards, Inc. v. Ralston Purina Co., 447 F.2d 660, 670 (5th Cir., 1971.) The element of unreasonableness introduces an objective standard.[7] The question for the jury, being phrased in terms of what a rea-

sonably prudent individual would do under the circumstances introduces an element of justification a concept foreign to the *volenti* defense. *Halepeska, supra,* at 379.

Section 402A of the Restatement of Torts 2nd, comment (n), represents the successful ingraftation of elements of contributory negligence to the doctrine of *volenti.* On a subjective standard the plaintiff must have been shown to have knowledge of the first three elements of *Halepeska volenti.* The voluntariness element, however, requires a finding of both subjective voluntary action, vis-a-vis the action of an automaton, Greenhill, Assumption of Risk, 16 Baylor L. Rev. 111 (1964), and an objective finding of unreasonableness.[8] Compare Myers v. Day and Zimmerman, *supra,* with Ross v. Up-Right, Inc., *supra.* See also Bushnell, Illusory Defense of Contributory Negligence in Products Liability, 12 Cleve-Marsh L.Rev. 412 (Sept., 1963).

The district court's instructions in this regard are an exemplary reflection of this union:

"In this connection, you are instructed that the defense of voluntary

7. When a *volenti* defense is submitted to a jury, it is submitted on a subjective standard; that is, did the plaintiff know, appreciate, etc. Contributory negligence, however, is submitted on a reasonably prudent man standard. An element of justification and reasonableness is present in contributory negligence which is absent in *volenti.* *Halepeska, supra;* Greenhill, Assumption of Risk, 20 Southwest Law Journal 1, 17 (1966); Epstein, Products Liability: Defenses Based on Plaintiff's Conduct, 1968 Utah Law Review 267 (May 1968).

8. Professor Keeton, in his article Assumption of Risk in Products Liability Cases, 22 La.L.Rev. 122 (1961) poses the following hypothetical: Plaintiff Black and Blue are loaned a defective motorcycle. The purchaser knows of the defect and points it out to Black but not to Blue. Plaintiffs must have some transportation and use the defective motorcycle. In the ensuing lawsuit against the motorcycle manufacturer, Blue, who did not know of the defect, may recover, but Black could not.

Keeton suggests that the result is no more paradoxical than the standard applied in contributory negligence actions, when a plaintiff who knows more about the dangers of some object is held legally responsible on a higher standard, that of a reasonably prudent individual possessed of this additional knowledge. But the issue to Keeton appears to be whether the consented to risk was in the exercise of the plaintiff's free choice. The issue is not could plaintiff have chosen another mode of transportation, but was it unreasonable for him to have used the one chosen. Compare the position adopted by the Restatement 2nd. See also Keeton, Assumption of Product Risk, 19 S.W.L.J. 61 (1965); Tort Defenses to Strict Products Liability, 20 Syracuse L.Rev. 924 (1968–1969); Levine, Buyer's Conduct as Affecting the Extent of Manufacturer's Liability in Warranty, 52 Minn.L.Rev. 627 (1968); Comment, Products Liability, For the Defense—Contributory Fault, 33 Tenn.L.Rev. 464 (1966).

assumption of risk has four essential elements:

"First, that the Plaintiff has knowledge of facts constituting a dangerous condition;

"Second, that he knows that condition is dangerous;

"Third, that he realizes and appreciates the nature or extent of the danger; and

"Fourth, that he voluntarily exposes himself to this danger.

"In this case the first three elements are undisputed. What is in dispute is whether the Plaintiffs' exposure to the risks of operating this automobile was voluntary. If that exposure was voluntary, then Plaintiffs may not recover on either of their alternative grounds of recovery.

"If that exposure was involuntary, the Plaintiffs may recover on either or both of such theories.

"In connection with determining whether the Plaintiffs' exposure was voluntary, you are instructed that a person is not at fault in voluntarily exposing himself to a known and appreciated danger, if; under the same or similar circumstances, an ordinarily prudent person would have incurred the risk which such conduct involved. Thus, if there was some reasonable necessity or propriety which justified Plaintiffs in exposing themselves to the known risks involved, or if by the exercise of care proportionate to the danger Plaintiffs might reasonably have expected to have avoided the danger, or if there was no other reasonable course open to them but to make continued use of this automobile, then Plaintiffs cannot be found to have voluntarily exposed themselves to the risk."

Recognizing the different forms by which Texas and federal courts submit questions to the jury, we conclude that when the Texas courts are presented with the requested submission of a *volenti* defense in a strict liability products case, they would reach the same result as we have obtained. The Tenth Circuit, whose *Erie* light shines as brightly as our own, in Littleton v. Western Union Telegraph Co., 10th Cir., 442 F.2d 1169 (1971), applying Texas law in a "slip and fall" case, held that although plaintiff knew that the floor had been wet down all around her, it could not be said that she had voluntarily incurred the risk of slipping when she jumped the puddle toward the door. The court there considered the conduct reasonable as the actions of the defendant had left her no other reasonable alternative.

The Third Circuit, applying Pennsylvania law in Elder v. Crawley Book Machinery Co., 3rd Cir., 441 F.2d 771 (1971), reached a formulation of a *volenti*-like defense to a strict liability products case similar to our own. Pennsylvania in Webb v. Zern, 422 Pa. 424, 220 A.2d 853, adopted Restatement § 402A, and in Ferraro v. Ford Motor Co., 423 Pa. 324, 223 A.2d 746, adopted a position similar to that of the Texas court in *Shamrock*, supra. In *Elder* the court said:

"We conclude, therefore, that if the plaintiff's fingers became placed in a dangerous position in the machine by reason of inadvertence, momentary inattention or diversion of attention, that this would not amount to assumption of the risk.

This construction of the defense is consistent with the philosophy of the Restatement which permits the injured consumer to recover from the manufacturer who is held responsible for a defect in the product even without negligence on his part. This theory of concern for the user, however, is not unfairly frustrated by sanctioning a defense against the claim of a person who knows of the defect but chooses to use the product nevertheless. It is fair to state in such a situation that the manufacturer's obligation to furnish a safe product has been waived by the consumer's considered choice to chance the danger involved in the defect."

The result we have reached requires no more than comment (n)—that the continued use of the product be voluntary and unreasonable under the circumstances.

The limits of the manufacturer's liability for releasing a defective and unreasonably dangerous product in the *volenti* area are that the plaintiffs consent to incur the risk has been voluntarily given and is objectively unreasonable. The plaintiff at bar was entitled to go to the jury with the question of whether his consent was voluntary or was the product of duress of circumstances and reasonable.[9] This was the district court's situation at the time General Motors moved for a directed verdict: Messick had testified that he used his automobile in earning his livelihood and drove approximately 1000 miles a week; he had submitted evidence that the Oldsmobile at issue had been financed at a monthly cost of approximately one-sixth of his income. In these circumstances it was for the jury to determine whether a reasonably prudent man would have continued to use the vehicle or would have purchased another while seeking recourse against General Motors under the law of sales. The jury, properly instructed, concluded in plaintiffs' favor.

The judgment is affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is Denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is Denied.

9. The sufficiency of the evidence to present a jury question is a federal question and federal standards are applied. Boeing v. Shipman, 411 F.2d 365 (5th Cir., 1969). The same result should obtain

under state evidentiary standards. Compare Casper v. General Motors Corp., 472 S.W.2d 552 (Tex.Civ.App., Eastland, 1971), writ ref'd n. r. e.