Lloyd WOOTEN, Plaintiff-Appellant,

v.

WHITE TRUCKS, a Division of White Motor Corporation, and White Motor Corporation, Defendants-Appellees.

No. 74–2204.

United States Court of Appeals, Fifth Circuit.

June 16, 1975.

Rehearing and Rehearing En Banc Denied Sept. 29, 1975.

John W. Norman, Oklahoma City, Okl., E. B. Rood, Tampa, Fla., for plaintiff-appellant.

Joe B. Weeks, Calvin J. Faucett, Leon H. Handley, Orlando, Fla., for defendants-appellees.

Before BELL, THORNBERRY and GEE, Circuit Judges.

GEE, Circuit Judge:

This diversity tort suit requires us to consider how a Florida court would conclude a Kentucky court would decide a point which neither[1] has yet passed upon.

Plaintiff Lloyd Wooten worked for a Florida food company as a long-haul truck driver. He drove a truck-tractor of the type known as cab-over-engine made by defendant White Motor Corporation (White). On July 18, 1971, in Kentucky, Mr. Wooten was approaching a toll plaza by crossing a high bridge, in train behind another truck and a mobile home. As the mobile home slowed for the plaza, the truck following it and leading Wooten rear-ended it, and the two ground to a stop blocking the road. Wooten applied brakes and drove for a gap at the right of the tangle. Unfortunately, he could neither quite stop nor quite squeeze by, and the left front of his cab struck the right rear of the jack-knifed trailer at a speed of about five miles per hour. The light-weight fiberglass and aluminum cab did not withstand this impact; it was penetrated, and Wooten's left leg was crushed against his seat's front brace. As a result, it was amputated at the upper calf.

Plaintiff brought suit in Florida, where he resided, against White, an Ohio corporation, claiming the tractor cab was so deficient in design and construction as to render White strictly liable or indicate negligence. As plaintiff's brief advises us, the cab-over-engine design permits truckers to pull a larger trailer because of the shorter tractor, is more maneuverable, affords greater visibility by moving the driver forward, facilitates engine service by using a light-weight cab which tilts easily without requiring springs or power, etc. Since the trucker works against a 73,280-pound overall federal weight limit, a lighter cab permits a greater payload. Makers of trucks have competed, therefore, to lighten cabs, and stiffening this cab sufficiently to have resisted this impact would probably have made the tractor noncompetitive. Defendants' engineers testified without dispute that their cabs were as safe as any of this type in the industry.

At trial, plaintiff dismissed the negligence count and went to the jury in strict liability, on a "crashworthiness" or "second impact" theory, while defendant resisted and, as well, advanced assumed risk as an affirmative defense. The jury found for defendant in response to a general charge. On appeal plaintiff principally complains of the framing of the court's charge on strict liability and of submission of the assumed-risk charge.[2] We affirm.

---

1. West v. Caterpillar Tractor Co., 504 F.2d 967 (5th Cir. 1974) (Florida). As to Kentucky, see text following.

2. At least two questions of some difficulty seem to have worn away in the trial-appellate process so as to require no decision. Ohio, where the cab was in large part designed, does not appear to accept the "crashworthiness" concept as a basis of liability. Defendant contended for application of Ohio law under Flori-da's lex loci delictus choice-of-law rule, urging that the wrong, if any, was done where the cab was envisioned and made. The district court, however, ruled pre-trial for Kentucky law, and defendant does not pursue the issue seriously before us. The same is generally true of the difficult question whether Kentucky would accept the concept of crashworthiness. The concept has by no means been generally accepted, let alone by Kentucky—the

### The "Crashworthiness" Instruction

It seems ironic that the parameters of decision on this diversity-bound theory of liability should be set by federal cases. In *Evans*,[3] the Seventh Circuit rejected the "crashworthiness" concept entirely on reasoning that, though automobile collisions are foreseeable, they are not within the intended purposes of the machine and the manufacturer's duty does not therefore extend to designing against them. The court observed that manufacturers know as well that their cars will sometimes be driven into water, but are not thereby obliged—on pain of liability for damages—to provide flotation gear. *Larsen*,[4] on the other hand, explicitly rejects the "intended use" reasoning of *Evans*, observing that since makers know a high percentage of automobiles produced are at some time or another involved in serious accidents, designing for as much safety as is reasonably attainable under these statistically-likely circumstances (and under the given state of the art) is among the manufacturer's duties. Unwilling to concede an inch to the *Evans* reasoning, the *Larsen* court went so far as to meet its illustrative example head-on, observing that the manufacturer's duty may indeed require consideration of the cars' flotation capability. *Dreisonstok*[5] represents the Fourth Circuit's attempt to chart a course between *Evans'* perhaps somewhat-unworldly view and the *Larsen*-induced spectre of one approved automobile design resembling nothing so much as a $100,000 amphibious tank. It was *Dreisonstok* which the court below sought to follow, and it is essentially its claimed failure in that of which Mr. Wooten complains to us. The *Dreisonstok* opinion therefore merits a brief discussion here.

Terri Lee Dreisonstok, a passenger, was injured in a Volkswagen microbus whose driver chose climbing a telephone pole over a head-on collision. The microbus, like White's cab-over-engine tractor in our case, achieves enhanced maneuverability and added cargo space at a cheap price by putting the front seat at the vehicle's forward wall. Her strict liability action against Volkswagenwerk presented one theory only: that the microbus was unreasonably dangerous because it did not conform to the configuration of the then-standard American passenger car, with the engine in front and the passengers behind it.

This theory was rejected by the *Dreisonstok* court. Instead, the court enunciated a balancing approach in which the purpose of use of the vehicle, its safety by comparison with other *like*[6] vehicles, considerations of price economy, and the apparency of the design's hazards to the user all receive weight in a duty calculus to be undertaken by the court and in which foreseeability of harm is merely another, albeit an important, factor. And, as noted, it was this general doctrine of unreasonable danger in *all* likely circumstances, balanced against the usefulness of the conduct (read design) in question which informed *Dreisonstok* and which the court below adopted.

█ The issue tendered by Wooten in this area is therefore narrow: did the court's charge, in context, misadvise the jury on the law according to *Dreisonstok*, which both plaintiff and the court agree[7] is the canon? The offending portion of the charge reads:

The failure of a manufacturer of a truck-tractor to adopt the most modern, or even a better safeguard, does not make the manufacturer legally lia-

---

usual objection being that internal safety features (like unused safety belts) cannot be seen as in any degree causing the *accident.* At all events, we assume, but do not decide, each of these issues as plaintiff contends.

**3.** Evans v. General Motors Corp., 359 F.2d 822 (7th Cir. 1966) (an *Erie*-guess at Indiana law).

**4.** Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968) (Michigan diversity, but decided without apparent reference to Michigan law—if any—on this point).

**5.** Dreisonstok v. Volkswagenwerk, A. G., 489 F.2d 1066 (4th Cir. 1974) (*Erie*-guess at Virginia law).

**6.** The *special characteristics of convertibles* and the unfairness of comparing them to different designs are instanced.

**7.** Defendant preferred *Evans,* as noted above.

ble to a person injured by that tractor. The manufacturer is not a guarantor that nobody will get hurt in using the machine. Nor is there any duty upon the manufacturer to produce a tractor that is "accident-proof." *What the manufacturer is required to do is to make a product which is free from defective and unreasonably dangerous conditions.* (emphasis added).[8]

Wooten contends that ". . . the court's instruction wholly failed to inform the jury that a truck manufacturer had any duty . . . to design a vehicle . . . to provide reasonable protection in the event of a collision."[9] We simply disagree. On the assumption that "crashworthiness" is the rule, the portion of the charge quoted above amply conveys the notion that even a use of the machine which results in an accident does not abrogate the truck-maker's duty to eliminate unreasonable hazards in his product, though he is not a guarantor of safety in this (or any other) circumstance. After all, the only fact situation presented the jury involved injury in the course of an admitted accident; they are unlikely to have thought the whole proceeding a mummery, which did they take Wooten's view of the charge they must have. The charge contains no faintest hint that accidents constitute a misuse in the *Evans* sense,[10]

barring recovery, or that the duties which it lays on the truck manufacturer are inoperative in the only fact situation the jury is asked about—an accident. This contention of Mr. Wooten lacks merit.

*Assumption of Risk: Error to Give the Instruction?*

Wooten complains as well of the court's instruction on assumption of risk:

The defendant, White Motor Corporation, contends that the plaintiff, Lloyd Wooten, assumed the risk of injury from the dangers which plaintiff contends caused his injury. If you find that defendant has established each of the following propositions, the plaintiff cannot recover:

One, that a dangerous situation or condition existed.

Two, that the dangerous situation or condition was obvious, or that the plaintiff knew of the dangerous situation.

And, three, that the plaintiff voluntarily exposed himself to the danger and was injured thereby.

■ The complaint is that the instruction submits so-called "pure" assumption of risk as a defense and that Kentucky has abandoned that doctrine in favor of a "qualified" one in which even a know-

---

**8.** For context, the relevant remaining charge, all of which preceded the above, was:

In this case the Plaintiff, Lloyd Wooten, claims damage for the loss of the lower portion of his left leg, which injury is alleged to have been caused by a defective condition in a 1967 White truck-tractor, 7400 Series, known as a cabover engine truck-tractor.

The Plaintiff must establish three essential elements in order to recover as follows:

First, that White Motor Corporation manufactured and sold the cabover engine truck-tractor being operated by the Plaintiff at the time of the accident involved in this case, and that at the time of such manufacture and sale the tractor was in a defective condition unreasonably dangerous to the user or driver.

Second, that the tractor was expected to and did reach the employer of the Plaintiff, and was thereafter operated up to the time of the accident[,] without substantial change in the condition in which the Defendant sold it.

And third, that the defective condition in the tractor proximately caused the injury complained of by the Plaintiff Wooten.

A product is in a defective condition unreasonably dangerous to the user when it has a propensity for causing physical harm beyond that which would be contemplated by the ordinary user having ordinary knowledge common to the foreseeable class of users as to its characteristics.

A produce is not defective or unreasonably dangerous merely because it is possible to be injured while using it.

**9.** The charge-conference transcript indicates Wooten would have been satisfied with very minor revisions indeed of the charge actually given, principally replacement of the sentence italicized in the text with one altered to read, following the word *product*, ". . . which is reasonably safe for reasonably foreseeable circumstances."

**10.** Or any other.

ing exposure to danger does not bar recovery unless it is *unreasonable.* As a theoretical matter the contention seems well-taken. We think that under Kentucky law, the third proposition of the charge properly should accommodate a knowing exposure to danger under conditions of urgent necessity "such as to save a life," [11] where there is evidence of such conditions. For two reasons, however, reversal is not required here: the charge was not objected to on this ground [12] and is not plain error,[13] and there was no evidence of such urgent necessity as Kentucky law would require to render reasonable an encounter with known or obvious danger. The first of these reasons requires no discussion, only a reference to the pertinent portion of Fed.R.Civ.P. 51: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The second bears brief discussion.

■ In Parker v. Redden, 421 S.W.2d 586 (Ky.1967), a negligence case, the Kentucky Court uprooted from Kentucky jurisprudence the "pure" assumption of risk defense in favor of the "qualified" one. We are not cited, nor have we found, a Kentucky authority precisely in point on the status of the "qualified" defense as to strict liability. We cannot, however, believe [14] that Ken-

11. Parker v. Redden, 421 S.W.2d 586, 593 (Ky. 1967).

12. Counsel for Wooten had submitted a charge incorporating the concept of unreasonable encounter, but did not object to the charge as actually given on this ground, either at the charge conference or after the delivery of the charge. The sole objection to the court's charge on assumption of risk was as follows:

COUNSEL FOR PLAINTIFF:
Next, Your Honor, we do find some quarrel with your definition of "assumption of the risk". I think it varies substantially from that as contained in Florida Standard 3.8, which is supposed to be a statement of the Florida law.

THE COURT:
Wait a minute. What is the law of Kentucky?

COUNSEL FOR PLAINTIFF:
I think the Florida law is about the same here as it is in the Kentucky, that the test is the same, that is, that it is a twofold thing. That is, that the test is not whether the dangerous condition was obvious, but whether the Plaintiff knew or, at the very least, should have known about it.
You recall in the Bolm case, the condition which caused his injury there, the rack, was obvious. The effect of it was not obvious. They said that he either knew or should have known of that before you could call that assumption of the risk.

THE COURT:
Well, what the import was as I read the opinion was not whether or not the defect was obvious, but whether or not its potential for causing injury was obvious.

COUNSEL FOR PLAINTIFF:
Right. But, i. e., the defective condition—

THE COURT:
Right. And to that extent I am not entirely sure that case can be reconciled with Driessenstock.

13. One so egregious as to have " . . . seriously affected the fairness, integrity, or public reputation of judicial proceedings." 9 C. Wright & A. Miller, Federal Practice and Procedure 673 (1971). See Delancey v. Motichek Towing Service, Inc., 427 F.2d 897 (5th Cir. 1970) for an exposition of the view taken in this court.

14. Though we sometimes err in such matters, e. g. Henderson v. Ford Motor Co., 519 S.W.2d 87, 91 (Tex.1975):

The United States Court of Appeals for the Fifth Circuit has had several cases before it which required a decision as to the Texas law at this particular point. E. g., Borel v. The Fibreboard Paper Products Corp., 493 F.2d 1076 (5th Cir. 1973); Messick v. General Motors Corp., 460 F.2d 485 (5th Cir. 1972). In *Messick* the plaintiff knew of the defect in the front suspension system of his automobile and had been told by a mechanic that if he continued to drive the car it would kill him. He did continue to drive it and, though he was not killed, he was injured. He argued that his use of the automobile after knowledge of the danger was reasonable because of economic duress since he depended upon his car in his work as a salesman and he was unable to obtain any substitute transportation. The jury was instructed:

"[A] person is not at fault in voluntarily exposing himself to a know and appreciated danger, if, under the same or similar circumstances, an ordinarily prudent person would have incurred the risk which

tucky would discriminate as to defenses according to theories of defendant's liability in a manner unfavorable to one cast in *strict* liability, which may be imposed in circumstances barren of fault. It seems clear that where a situation rendering defendant liable exists, whether grounded in fault or otherwise, and is known or obvious to the injured party, a defense held valid to negligence liability would be thought a sufficient answer to strict liability. And the majority of jurisdictions appear to recognize some form of assumed risk as a defense in product liability causes.[15] Defendant's liability, if we assume it, is of the most tenuous: design liability imposed for actions conforming to universal practice. As the Kentucky Court observed in a more recent case than *Redden* :

> We agree that *if an industry adopts careless methods, it cannot be permitted to set its own uncontrolled standard.* Herme v. Tway, Ky., 294 S.W.2d 534 (1956). If the only test is to be that which has been done before, no industry or group will ever have any great incentive to make progress in the direction of safety. We also agree, however, with Prosser's declaration that: "Cases will no doubt be infrequent in which any defendant will be held liable for failing to do what no one in his position has ever done before; but there appears to be no doubt that they can arise." Prosser, Handbook of the Law of Torts, section 33, page 167 (4th Edition 1971).

Jones v. Hutchinson Mfg., Inc., 502 S.W.2d 66, 70 (Ky.1973).[16]

As all know who care to read, Dean Prosser was at least present at the conception of § 402A, and if there is an author in this common-law ambit who attains to the stature of the civil juris consults it is he. We may therefore assume that he was not lightly invoked. Hence, we conclude that as to this essentially no-fault liability defenses to actual fault which are approved by Kentucky would be admitted as well.

■ So assuming, we must inquire whether Kentucky law requires a charge incorporating the qualification of *reasonable* (or, perhaps more appropriately, not unreasonable) encountering of a known danger in this case. We can only conclude that it would not, that no evidence lies in this record to raise the proposition. In *Redden,* as noted, little if anything more than matters which might give rise to a charge on the traditional doctrine of rescue were instanced: " . . . if there was an urgent necessity for the plaintiff to incur the risk, *such as to save a life, and* if the risk could not easily have been eliminated, there is no reason why the damage suffered by the plaintiff should be borne by him rather than by the defendant who negligently created the risk." 421 S.W.2d, at 593 (emphasis added). No evidence of anything approaching this magnitude appears here, only matter which *might have supported some such contention as that the cab-over-engine*

---

such conduct involved. Thus, if there was some reasonable necessity or propriety which justified Plaintiffs in exposing themselves to the known risks involved, or if by the exercise of care proportionate to the danger Plaintiffs might reasonably have expected to have avoided the danger, or if there was no other reasonable course open to them but to make continued use of this automobile, then Plaintiffs cannot be found to have voluntarily exposed themselves to the risk." 460 F.2d 493.
The Fifth Circuit upheld this instruction and decided that the Supreme Court of Texas would agree with that statement of the law. *We do not.* Assumption of risk is the defense; contributory negligence or failure to act reasonably is not. (Emphasis added).

**15.** Indeed, we have found no American jurisdiction which does not, most following the "qualified" doctrine of Comment n to Restatement of Torts 2d, § 402A. See Annot., 46 A.L.R.3rd 240, 253–256 (1972).

**16.** Nor does the extent of even this seeming retrenchment by the Kentucky Court of Appeals pass unquestioned. Justice Osborne of that court, concurring, views the majority opinion as adopting *sub silentio* as a condition of liability that, whether the machine be unreasonably dangerous or not, it " . . . differ[s] from other standard products on the market." Jones v. Hutchinson Mfg., Inc., 502 S.W.2d 66, 71 (Ky.1973).

truck came with the job and its use was Wooten's economic necessity. The illustration used by the Kentucky court—saving a life—strongly implies that matters more exigent than job security are required to ground an excuse from knowing encounter.[17]

We have carefully considered plaintiff's remaining assignments. None merits discussion or approaches reversible error. The jury has had its say, responding to a charge which fairly applied Kentucky law to the facts of this case. There it ends.

Affirmed.

THORNBERRY, Circuit Judge (specially concurring):

I am satisfied that the "crashworthiness" charge was not in error, and I join in the narrow conclusion reached by the majority that judgment for the defendant is correct on the basis of counsel's waiver. I have serious reservations about the assumption of risk portion of the majority opinion and its apparent assumption that the evidence justified some kind of charge on that defense. Nevertheless, plaintiff well knew that the trial judge intended to submit the case to the jury upon a general charge and general verdict. Indeed, plaintiff tendered that form of submission. At the charge conference, plaintiff seems to have abandoned his earlier motion for an instructed verdict, which was grounded on the argument that the record contained no substantial evidence of knowledge on his part concerning the cab's dangerous propensity literally to shear and collapse upon an occupant at low speed impact. Was this propensity so obvious that the jury was entitled to

charge plaintiff, a man whose education stopped at the eighth grade, with the requisite awareness of the risk, see item Two of the trial court's charge on assumed risk quoted, in Judge Gee's opinion, *supra,* p. 637, simply on the basis of his experience as a driver of this type of truck and his general familiarity with heavy vehicles? The trial court thought so in overruling plaintiff's motion for instructed verdict. The defendant apparently thinks so, for it makes no effort to refute plaintiff's no evidence point on appeal. For me the problem is most difficult. *See* Restatement (Second), Torts § 402A, comments g and i; *cf.* Williams v. Brasea, Inc., 5 Cir. 1974, 497 F.2d 67, 78–79, on rehearing 5 Cir. 1975, No. 72–3623 at slip p. 5688.

But it demands no further discussion in this case, for the plaintiff neither asserted the point by way of objection to the charge, nor did he ask that the trial court submit the case upon special interrogatories.[1] In a motion for new trial, the plaintiff assigned as error the overruling of his motion for instructed verdict. On appeal, he continues to request a new trial on that basis as well as others. Yet, in view of plaintiff's willingness to take his chances with the jury on a general submission, his ambivalence and vagueness below with respect to the charge (see F.R.Civ.P. 51), and the not-insubstantial possibility that the jury simply failed to find the cab unreasonably defective, thus pretermitting assumption of risk as the critical issue, I am constrained to resolve my doubts in favor of the judgment, and to conserve my sympathy. If this court is wrong on the substantive law, the Kentucky courts may freely say so. Furthermore, my reservations as to the Kentucky law sug-

---

17. At all events, Kentucky has repudiated economic necessity as an excuse for encountering a known or obvious hazard unless, possibly, it is established that plaintiff has made unsuccessful outcry against his conditions of employment, so that loss of his job is the only alternative to going ahead under hazardous conditions. Crush v. Kaelin, 419 S.W.2d 142 (Ky.1967). No such outcry occurred here.

1. *See* F.R.Civ.P. 49. If plaintiff (or defendant) had requested special interrogatories, but the trial court denied such request, the ruling would have been reviewable on appeal for abuse of discretion. *See* Borel v. Fibreboard Paper Products Corp., 5 Cir. 1974, 493 F.2d 1076, 1100. Of course, I could not intimate any view on how the issue would be decided.

gested by the majority may ultimately prove not well taken.[2] The judgment is correct, however, on independent procedural grounds, and on that basis I concur.

2. My views on the matter of assumption of risk in products cases are generally contained in comment n to § 402A, Restatement (Second), Torts, which the Supreme Court of Texas seemingly rejected in the *Henderson* case, from which Judge Gee quotes in footnote 14 of his opinion, *supra.* The reported Kentucky opinions, discussed by Judge Gee, I find of no real aid toward resolving how that state would handle the "reasonableness" riddle in products liability assumed risk situations, *i. e.,* whether Kentucky's courts would relegate "reasonable" assumption of risk to the status of a last clear chance-like doctrine available to rescuers but few others.